**Heriberto BALDAYAQUE, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**Docket No. 02–2611.**

United States Court of Appeals, Second Circuit.

Argued May 6, 2003.

Decided July 30, 2003.

Gates Garrity–Rokous, New Haven, CT (Stephen J. Lable, Wiggin & Dana, New Haven, CT, of counsel), for Appellant.

Jeffrey A. Meyer, Assistant United States Attorney, District of CT (Kevin J. O'Connor, United States Attorney for the District of Connecticut, Jonathan Biran, Assistant United States Attorney, District of Connecticut, New Haven, CT, of counsel), for Appellee.

Before: FEINBERG, MESKILL and JACOBS, Circuit Judges.

Judge JACOBS concurs in a separate opinion.

MESKILL, Circuit Judge.

Appeal from a judgment of the United States District Court for the District of Connecticut, Arterton, *J.*, denying the petitioner-appellant's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. The district court issued a certificate of appealability on the issue whether our holding in *Smaldone v. Senkowski*, 273 F.3d 133 (2d Cir.2001), always precludes the application of equitable tolling in a case where a habeas petition is untimely because of the extraordinary actions of the petitioner's attorney. We hold that it does not.

Vacated and remanded.

## BACKGROUND

On November 8, 1995, petitioner-appellant Heriberto Baldayaque (Baldayaque) pled guilty in United States District Court to the charge of conspiracy to possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846. At the time he committed this offense, Baldayaque, a citizen of the Dominican Republic, was in the United States illegally. On February 7, 1996, Baldayaque was sentenced principally to a term of 168 months imprisonment, a sentence which represented the very bottom of the applicable Sen-

tencing Guidelines range.[1] At sentencing, the court stated:

> [T]his is a very difficult sentence to impose. It is harsh, but the facts require it. If the Government should at some time choose to deport Mr. Baldayaque at a point prior to the expiration of his sentence, the court would have no objection and would not deem that to be an inappropriate action to take with regard to Mr. Baldayaque.

Baldayaque appealed to the Second Circuit, and on February 14, 1997, his conviction and sentence were affirmed. Baldayaque did not seek review in the Supreme Court.

The following facts were established at an evidentiary hearing held by the district court on the habeas petition. The witnesses' accounts differ as to the precise chronology of the events described. However, the variations among their accounts as to the timeline do not affect the outcome of this appeal.

Within a matter of days after we affirmed his conviction and sentence, Baldayaque asked his wife, Christina Rivera (Rivera), to hire an attorney to file a petition for a writ of habeas corpus on his behalf. Baldayaque described the motion he wanted filed as a "2255." Rivera and Baldayaque each spoke only Spanish at that time, so Rivera sought assistance in finding an attorney from Reverend Brixeida Marquez (Marquez), who spoke both English and Spanish. Marquez and Rivera chose Attorney Burton Weinstein (Weinstein) and together went to Weinstein's office to retain him on Baldayaque's behalf in February 1997.

Marquez and Rivera testified that on this first visit to Weinstein they asked Weinstein to file a "2255" even though neither woman knew what a 2255 was. Marquez testified that Weinstein did not seem to know what a 2255 was. Weinstein asked the women to get Baldayaque's sentencing transcript and other papers for him, and stated that he would look into the case. Weinstein testified that he did not recall being asked to file a section 2255 petition. Weinstein also testified that his notes of the meeting indicated that the women requested he file a motion for commutation of sentence based on Baldayaque's willingness to consent to immediate deportation.

Rivera and Marquez delivered the sentencing documents to Weinstein's office, apparently sometime in early March 1997. At some point after that, Weinstein told Rivera and Marquez that his normal fee was $10,000, but that he would accept a payment of $5,000 to take the case because Marquez was a reverend. Rivera and Marquez raised the money from friends and neighbors and by selling homemade food and delivered the money to Weinstein.

On March 25, 1997, Rivera and Marquez met with Weinstein again.[2] Prior to this meeting, Weinstein had reviewed Baldayaque's sentencing transcript, but he had not done any legal research. At the meeting, Weinstein told Rivera and Marquez it was too late to file a 2255. In fact, at the time of this meeting, Baldayaque still had

1. Baldayaque was sentenced at an offense level of 35, Criminal History Category I, which, under the 1995 Guidelines, dictated a sentence of 168–210 months imprisonment.

2. The record contains inconsistent evidence about the events of March 25, 1997. Weinstein produced a note suggesting that March 25, 1997 was in fact the date of his very first meeting with Rivera and Marquez. However, he also produced a receipt stating that he had received full payment of $5,000 from Rivera and Marquez on March 25, 1997. As noted earlier, the precise timeline has no impact on our decision.

nearly fourteen months remaining within which he could file a timely petition. Weinstein also told them not to worry, because he had "good news" for them: the Dominican Republic had said it would accept Baldayaque if he were deported, and Weinstein thought they could get Baldayaque deported early because he was very sick.[3]

Weinstein met with Marquez and Rivera on two or three occasions. He never spoke directly with Baldayaque. After they paid the $5,000, Rivera and Marquez did not see Weinstein again; however, Marquez called Weinstein about once a month. Weinstein assured her that he was just "waiting for a court date" and that he was taking care of everything.

On November 12, 1997, Weinstein filed a motion for modification of Baldayaque's sentence to permit him to be deported immediately. The motion cited no authority.

On January 18, 1998, Baldayaque sent a letter to the clerk of court inquiring whether Weinstein was "still representing me." The clerk responded to Baldayaque on February 11, 1998, informing him that Weinstein was still his attorney of record, and that his motion was still pending. A copy of the clerk's letter was sent to Weinstein and to the Assistant United States Attorney handling the case. Weinstein did not attempt to contact Baldayaque after receiving a copy of the letter.

Weinstein's motion was denied by the district court on June 9, 1998. The district court held that it lacked jurisdiction to order the relief requested, *i.e.*, immediate deportation, and that the motion was "un-

timely even if cognizable under Fed. R.Crim.P. 35(c)." [4] On June 16, 1998, Weinstein sent a letter to Baldayaque informing him that the motion had been denied, and that he saw "no basis for an appeal." However, this letter was returned to Weinstein as undeliverable, and Baldayaque never received it. Weinstein spoke to Marquez on the phone, informing her that the motion had been denied and telling her: "there is nothing we can do now." By then, the one-year limitations period for filing a section 2255 petition had expired. Weinstein took no further action on behalf of Baldayaque.

On February 11, 2000, eighteen months after the motion filed by Weinstein had been denied, Baldayaque filed a *pro se* motion pursuant to Rule 35, requesting modification of his sentence. The district court denied the motion on August 23, 2000, and in its order informed Baldayaque of the requirements for filing a section 2255 petition. Believing that this meant he still had a right to file a habeas petition, Baldayaque filed a section 2255 petition *pro se* in November 2000. The district court denied the petition as untimely, and issued a certificate of appealability on the question of equitable tolling. *See Baldayaque v. United States*, 3:99CV02272(JBA), 2002 WL 31094962, at *6 (D.Conn. Sept. 6, 2002). This appeal followed.

## DISCUSSION

The district court had federal question jurisdiction because Baldayaque filed his petition pursuant to 28 U.S.C. § 2255.

---

**3.** At Baldayaque's sentencing, the court stated that Baldayaque had tested positive for tuberculosis. Rivera and Marquez apparently were not aware of any such diagnosis. It is not clear from the record whether Baldayaque actually has tuberculosis or not.

**4.** In the ruling appealed from, the district court described Weinstein's November 1997 motion as "meritless" and "frivolous." *See Baldayaque v. United States*, 3:99CV02272(JBA), 2002 WL 31094962, at *2, *4 (D.Conn. Sept. 6, 2002).

Appellate jurisdiction is appropriate because the district court entered a final order denying the petition and issued a certificate of appealability on the issue of equitable tolling. The appeal was timely filed.

### I. *The District Court's Ruling*

■ "We review a district court's denial of a petition for writ of habeas corpus *de novo* and its factual findings for clear error." *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002) (internal citations omitted).

The district court dismissed Baldayaque's petition because it was untimely under the one-year limitations period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA). Baldayaque's time for seeking direct review of his conviction and sentence in the Supreme Court expired on May 14, 1997. Accordingly, he had until May 14, 1998, to file a petition pursuant to 28 U.S.C. § 2255. *See Clay v. United States,* 537 U.S. 522, 123 S.Ct. 1072, 1074, 155 L.Ed.2d 88 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."); *Green v. United States,* 260 F.3d 78, 80 (2d Cir.2001) ("Congress imposed a '1–year period of limitation' on section 2255 motions, which runs, in this case, from 'the date on which the judgment of conviction becomes final.' "). Baldayaque filed his *pro se* petition on November 28, 2000, more than 30 months late.

However, the court believed that the facts of Baldayaque's case suggested that the limitations period might be equitably tolled, rendering the petition timely. *See Green,* 260 F.3d at 82 (holding that equitable tolling is available for petitions filed pursuant to 28 U.S.C. § 2255). The court

appointed counsel for Baldayaque to address the question of equitable tolling, and conducted an evidentiary hearing at which Rivera, Marquez, Baldayaque and Weinstein testified.

■ Equitable relief such as tolling may be "awarded in the court's discretion only upon consideration of all the facts and circumstances." *Vitarroz Corp. v. Borden, Inc.,* 644 F.2d 960, 965 (2d Cir.1981).

> To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll. To show that extraordinary circumstances prevented him from filing his petition on time, petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances. Hence, if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.

*Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir.2001), *cert. denied,* 536 U.S. 925, 122 S.Ct. 2593, 153 L.Ed.2d 782 (2002) (internal citations and quotation marks omitted).

The district court found that extraordinary circumstances, specifically, Weinstein's conduct, prevented Baldayaque from filing his motion within the appropri-

ate time period. *See Baldayaque,* 2002 WL 31094962, at *3. However, the district court found that Second Circuit precedent precluded it from applying equitable tolling where the "extraordinary circumstances" present were a result of malfeasance by the petitioner's attorney. *See id.* at *6. The district court concluded:

> Because Baldayaque did everything that could have been expected of him and because he went to extraordinary ends to have a § 2255 motion filed on his behalf, the Court would, but for the *Smaldone* line of cases, equitably toll the limitations period in accordance with *Smith* [*v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) ]. However, *Smaldone* is controlling, and Baldayaque's motion must be denied as untimely.

*Id.*

 We must accept the district court's finding of fact that "Baldayaque did everything that could have been expected of him and ... went to extraordinary ends to have a § 2255 motion filed on his behalf" unless clearly erroneous. The district court's finding that our ruling in *Smaldone* precluded the application of equitable tolling in this case is a matter of law that we review *de novo.*

## II. Smaldone

In *Smaldone,* the Court reviewed the district court's dismissal of a habeas petition on timeliness grounds. *See Smaldone,* 273 F.3d at 135. The petitioner was convicted in state court, and after his conviction was affirmed on appeal, he sought collateral relief in state court. While his state court petition was pending, the petitioner filed a federal habeas petition, which was dismissed without prejudice because, as his state court petition had not yet been acted on, the petitioner had not exhausted his state remedies. The petitioner's attorney believed that when a petitioner was

pursuing state remedies, the one-year limitations period of AEDPA was "reset" and began running anew after the state court issued its decision. The petitioner accordingly filed his renewed federal petition, through counsel, within one year of the denial of relief in the state courts. Unfortunately, the attorney was wrong: the rule is not that the one-year period is reset by the filing of a state petition, but that the time is tolled during the pendency of the state petition. The federal petition which the attorney eventually filed was untimely under this rule. We held that the petitioner's attorney's error did not justify the application of equitable tolling. *See id.* at 138–39.

> Equitable tolling ... is only appropriate in rare and exceptional circumstances. To merit application of equitable tolling, the petitioner must demonstrate that he acted with reasonable diligence during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances beyond his control prevented successful filing during that time.
>
> This Circuit, like her sisters, has found attorney error inadequate to create the extraordinary circumstances equitable tolling requires.

*Id.* at 138 (internal quotation marks and citations omitted) (collecting cases). The district court interpreted this language to bar the application of equitable tolling to any case in which the cause of the petition being untimely was the malfeasance of the petitioner's attorney. *See Baldayaque,* 2002 WL 31094962, at *6. We do not believe that *Smaldone*'s holding is so far-reaching.

*Smaldone* relied on the Court's holding in *Geraci v. Senkowski,* 211 F.3d 6, 9 (2d Cir.2000), that a mistake by counsel as to the calculation of time remaining to file a petition did not constitute "extraordinary or unusual circumstances that would justi-

fy equitable tolling of the AEDPA's one-year limitation period." While it is true that the attorney errors present in *Smaldone* and *Geraci* did not constitute "extraordinary circumstances" sufficient to support equitable tolling, *Smaldone* does not dictate that the actions of a petitioner's attorney could *never* constitute "extraordinary circumstances." *See Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir.2002) ("[T]he kind of attorney errors at issue in cases where equitable tolling was denied differ materially from the error at issue in the instant case."). It is not inconsistent to say that attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period while acknowledging that at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary.

■ Weinstein's actions in this case are distinguishable from the attorney conduct in *Smaldone* and *Geraci*. The attorneys in *Smaldone* and *Geraci* made simple mistakes about the rules applied to the deadlines for filing of habeas petitions. Such mistakes are ordinary. Weinstein's actions, taken together, were extraordinary.

■ In spite of being specifically directed by his client's representatives to file a "2255," Weinstein failed to file such a petition at all. By refusing to do what was requested by his client on such a fundamental matter, Weinstein violated a basic duty of an attorney to his client. *See In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 17 (2d Cir.1986) ("As a matter of professional responsibility, an attorney owes a duty of loyalty to his client. This duty encompasses an obligation to defer to the client's wishes on major litigation decisions.").

■ Weinstein did no legal research on Baldayaque's case. Weinstein failed to comply with Rule 1.1 of the Connecticut Rules of Professional Conduct, which requires a lawyer to "provide competent representation to a client, [which] requires the legal knowledge, skill, *thoroughness* and *preparation* reasonably necessary for the representation." (emphasis added). Had Weinstein made a cursory review of the law, he would have discovered that it was not "too late" to file a section 2255 petition when he met with Rivera and Marquez in 1997; in fact, he would have discovered that he had until May 1998 to file such a petition within the limitations period.

Weinstein never spoke to or met Baldayaque. When his letter to Baldayaque was returned, Weinstein made no effort to locate Baldayaque. Weinstein failed to "keep [his] client reasonably informed about the status of [the case]" and failed to "explain [the] matter to the extent reasonably necessary to permit [Baldayaque] to make informed decisions regarding the representation," as required by Connecticut Rule of Professional Conduct 1.4.

■ Weinstein's actions were far enough outside the range of behavior that reasonably could be expected by a client that they may be considered "extraordinary." In *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir.2000), we held that the confiscation of the petitioner's legal papers by a corrections officer shortly before the section 2255 filing deadline was " 'extraordinary' as a matter of law." That was so even though the usual problems inherent in being incarcerated do not justify equitable tolling. Likewise, while the normal errors made by attorneys may not justify equitable tolling, extreme situations such as the one presented here require a different result. Accordingly, we hold that an attorney's conduct, if it is sufficiently egregious, may constitute the sort of "extraor-

dinary circumstances" that would justify the application of equitable tolling to the one-year limitations period of AEDPA.

### III. *Reasonable Diligence and Causation*

The presence of extraordinary circumstances is not enough, however, to justify the application of equitable tolling. A petitioner must also show that he acted with reasonable diligence, and that the extraordinary circumstances caused his petition to be untimely. *See Hizbullahankhamon,* 255 F.3d at 75.

 The standard is not "extreme diligence" or "exceptional diligence," it is *reasonable* diligence. On remand, the district court should ask: did the petitioner act as diligently as reasonably could have been expected *under the circumstances?* The circumstances here include: (1) Baldayaque's efforts at the earliest possible time to secure counsel for the purpose of filing a habeas petition; (2) Baldayaque's lack of funds to consult another lawyer; (3) Weinstein's assurances to Rivera and Marquez that everything had been done that could be done; (4) Weinstein's failure to communicate directly with Baldayaque *at any time;* (5) Baldayaque's lack of education and inability to speak or write English; and (6) Baldayaque's incarceration and attendant lack of direct access to other forms of legal assistance.[5] On remand, the district court should also consider whether Weinstein's actions prevented Baldayaque from filing a timely petition.[6]

### CONCLUSION

The judgment of the district court is hereby vacated, and this case is remanded to the district court for further proceedings in light of our conclusion that *Smaldone* does not absolutely preclude the application of equitable tolling based on attorney malfeasance.

JACOBS, Circuit Judge, concurring.

I write separately in support of the Court's mandate, because I would reach the same result (vacatur of the judgment) by a somewhat different route.

In dismissing the petition, the district court believed that it was constrained by our *Smaldone* decision, which ruled: "This Circuit, like her sisters, has found attorney error inadequate to create the extraordinary circumstances equitable tolling requires." *Smaldone,* 273 F.3d at 138 (collecting cases). The majority opinion now holds, however, that an attorney's error "may be so outrageous or so incompetent as to render it extraordinary." Maj. Op. at 152.

I agree with the majority that the district court read *Smaldone* too broadly, but I am reluctant to create a distinction between malpractice that is extraordinary and malpractice that is not. It will be very hard to draw that line, particularly since, unless the lawyer's conduct is extraordinary, it would not amount to malpractice in the first place. *See, e.g., Carney v. Philippone,* 332 F.3d 163, 167 (2d Cir.2003) (stating that attorney malprac-

---

**5.** We note that these factors are listed here only to inform the district court's evaluation of whether Baldayaque acted with reasonable diligence under the circumstances. This is a different inquiry from whether "extraordinary circumstances" existed.

**6.** We note that on appeal, Baldayaque raises for the first time an argument that Weinstein acted "completely adversely" to his interests,

and hence was not acting as his agent, and that Baldayaque therefore should not be bound by Weinstein's actions (or inaction). Because this argument was not raised below and is not necessary to the outcome of this appeal, we do not consider it here. However, should the district court feel it appropriate, it may consider such an argument on remand.

tice under New York law requires showing that the attorney "failed to exercise that degree of care, skill and diligence commonly possessed and exercised by an *ordinary* member of the legal community" (emphasis added)).

I think that principles of agency law furnish a superior basis for distinguishing this case from *Smaldone*. *Cf.* Maj. Op. at 153 n. 6 (declining to reach agency argument on ground it was raised for the first time on appeal and it is unnecessary to the outcome of the appeal).

The habeas petitioner in *Smaldone* argued that his lawyer's failure to file on time amounted to the kind of extraordinary circumstances that justify equitable tolling. In rejecting this claim, the *Smaldone* district court held that the petitioner was bound by his lawyer's negligent actions because the lawyer was acting as the petitioner's agent in preparing and filing a petition for habeas relief. *See Smaldone v. Senkowski*, No. 99–CV–3318, 2000 WL 1134391, at *6 (E.D.N.Y. Aug. 3, 2000), *aff'd*, 273 F.3d 133 (2d Cir.2001). The court explained that, outside the criminal context (where the Sixth Amendment guarantees a right to competent counsel), "'the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error.'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). In short, it is the petitioner (as principal) who has defaulted when the attorney fails to act on time.

The corollary to this rule is that when an "agent acts in a manner completely adverse to the principal's interest," the "principal is not charged with [the] agent's misdeeds." *Nat'l Union Fire Ins. Co. v. Bonnanzio*, 91 F.3d 296, 303 (2d Cir.1996). Here, unlike in *Smaldone*, there is an evidentiary basis for concluding that the peti-

tioner's lawyer was not acting as agent: he took a $5,000 retainer without undertaking the requested service; set aside his client's interests in favor of his own; and undertook a futile, unresearched, and frivolous initiative for the sole purpose of keeping the fee.

I concede that this agency argument was not raised in so many words in the district court. Generally, we decline to consider arguments raised for the first time on appeal. *See, e.g., Mattel v. Barbie–Club.com*, 310 F.3d 293 (2d Cir.2002). Nevertheless, petitioner articulated the factual basis for this argument in the district court by arguing that counsel acted adversely to petitioner's interests: "Attorney Weinstein disregarded his client's express instructions to file a Section 2255 petition." Mem. in Support of Motion to Vacate Conviction, at 8. And petitioner invoked the agency issue implicitly by citation to our decision in *Smaldone*, a case in which the district court's opinion relied on principles of agency law. *See* 2000 WL 1134391, at *6. We "sometimes entertain arguments not raised in the trial court" when "the elements of the claim were fully set forth and there is no need for additional fact finding." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir.1994). "Arguments made on appeal need not be identical to those made below ... if elements of the claim were set forth and additional findings of fact are not required." *Vintero Corp. v. Corporacion Venezolano de Fomento*, 675 F.2d 513, 515 (2d Cir.1982).

Here, it is unclear that any additional fact finding is required. The district court determined that "Baldayaque was effectively 'prevented' from filing a § 2255 motion," after he "requested that [Weinstein] file a § 2255 motion," and Weinstein told Baldayaque, after "no research whatsoever," that the filing period had expired. *See Baldayaque*, 2002 WL 31094962, at *1, *3.

These determinations amount to an implicit ruling that Weinstein was not acting in his client's interest; all that is missing is an express ruling on the mixed question of fact and law as to whether Weinstein ceased to be an agent and therefore ceased to bind Baldayaque to the consequences of his lawyer's actions. *See Nat'l Union Fire Ins. Co.*, 91 F.3d at 303. While I would remand to permit the district court to answer this question in the first instance, I am not sure that a remand on this issue is required.

Whether or not the factual findings are adequate, and whether or not the agency argument was properly raised in the district court, we have discretion to consider the agency issue in this appeal. *Greene*, 13 F.3d at 586 (stating that the "general rule that an appellate court will not consider an issue raised for the first time on appeal," can be "disregarded when we think it necessary to remedy an obvious injustice"). I would exercise discretion to entertain the agency argument here. Doing so would allow us to arrive at the manifestly proper result without creating a distinction between ordinary and extraordinary attorney malpractice—a distinction that is elusive, hard to apply, and counterintuitive.