B.D. PARKER, JR., Circuit Judge,
dissenting:
Because I believe that Jenkins’s petition was entitled to the benefits of equitable tolling, I respectfully dissent. The majority’s approach in my view incorporates two significant errors. It incorrectly analyzes a confusing body of New York case law dealing with the procedural prerequisites to pursuing an ineffective assistance of counsel claim in state court. And more importantly, it fails meaningfully to engage in the equitable analysis required by Holland v. Florida, — U.S.-, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010).
*306 Belot v. Burge sets out a three-part standard for reviewing a district court’s decision not to equitably toll AEDPA’s limitations period. 490 F.3d 201, 206-07 (2d Cir.2007). First, “[i]f a district court denies equitable tolling on the belief that the decision was compelled by law, that the governing legal standards would not permit equitable tolling in the circumstances — that aspect of the decision should be reviewed de novo.” Id. at 206. Second, “if the decision to deny tolling was premised on a factual finding, the factual finding should be reviewed for clear error.” Id. Third, “if the court has understood the governing law correctly, and has based its decision on findings of fact which were supported by the evidence, but the challenge is addressed to whether the court’s decision is one of those within the range of possible permissible decisions, then appellate review will be ... for abuse of discretion.” Id. at 206-07.
Although the majority declines to determine the appropriate standard of review, I think the district court’s decision to deny equitable tolling should be reviewed de novo since it was based on an incorrect interpretation of what the law required. The district court held that petitioner’s inability to satisfy a state law requiring that he provide an attorney affidavit in order to seek post-conviction relief on the grounds of ineffective assistance of counsel could not constitute an extraordinary circumstance. In the district court’s view “holding that such a state law requirement constitutes an extraordinary circumstance would mean that every petitioner claiming ineffective assistance of counsel would be able to equitably toll their claim pending receipt of an affidavit.” See Belot, 490 F.3d at 207-08 (finding district court decision that temporary prison lockdown could not qualify as an extraordinary circumstance warranting equitable tolling was “arguably a matter of law”). After Holland, which was decided after the district court’s opinion, this analytically rigid approach employed by the district court is no longer appropriate. As Justice Breyer pointed out, courts considering whether to toll AEDPA’s limitations period are courts of equity whose hallmarks are “flexibility,” the avoidance of “mechanical rules,” and the recognition that “specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.” Holland, 130 S.Ct. at 2563 (citations omitted). The district court should have, but did not, examine the equities specific to Jenkins’s application. Instead, it treated him as a stereotypical applicant. Applying the correct governing legal standard, I believe that Jenkins was entitled to equitable tolling. See Belot, 490 F.3d at 206-07.
A petitioner seeking equitable tolling must show (1) that extraordinary circumstances prevented him from filing his petition on time, and (2) that he acted with reasonable diligence in pursuing his rights during the period he seeks to toll. Holland, 130 S.Ct. at 2562; Diaz v. Kelly, 515 F.3d 149, 153 (2d Cir.2008); Baldayaque v. United States, 338 F.3d 145, 150 (2d Cir.2003). Jenkins, in my view, meets both parts of this test.
As to the first part, Jenkins believed, quite reasonably, that in order to bring an ineffective assistance of counsel claim in state court, he was required to provide an affidavit from Oliver Smith, his trial attorney, concerning the advice or strategy being challenged. Jenkins pursued the affidavit but, despite diligent efforts, was unable to reach his lawyer for nearly two years. For example, in a letter to Smith dated July 25, 2003, approximately one week after Jenkins’s application for leave to appeal his state court conviction was denied, Jenkins wrote, “Mr. Smith you never told me I was facing 50 years *307 imprisonment. You told me 10-12 years is what I was facing if we loss [sic] trial. I need an affidavit from you stating this or the part of the record that states this.” Jenkins sent a follow up letter making a similar request several months later. Notably, Jenkins sent both of these letters prior to the expiration of the statutory period for filing a habeas petition raising an ineffective assistance of counsel claim. Moreover, even after finally receiving a response from Smith, it took two more letters from Jenkins before he finally received the requested affidavit. Smith’s affidavit, which confirmed Jenkins’s contention that he had not been advised of his sentencing exposure, was dated nearly three years after his first request. These circumstances support equitable tolling. See Baldayaque, 338 F.3d at 152-53 (“[A]n attorney’s conduct, if it is sufficiently egregious, may constitute the sort of ‘extraordinary circumstances’ that would justify the application of equitable tolling to the one-year limitations period of AEDPA.”); see also Holland, 130 S.Ct. at 2563-64 (“Several lower courts have specifically held that unprofessional attorney conduct may, in certain circumstances ... amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling.” (citing cases)).
The New York case law on whether an attorney affidavit is actually required under these circumstances is, charitably stated, confused. Any reasonably cautious lawyer reviewing the New York case law on this issue could easily conclude that such an affidavit was required or that, at a minimum, proceeding without such an affidavit was an imprudent step that courted summary denial of the application. Similarly, a pro se petitioner, attempting to parse this body of case law could easily have concluded that an affidavit or other explanation from the attorney whose assistance is being challenged was required, and that failure to provide one would have been fatal to an ineffective assistance of counsel claim. For example, in 1998, the First Department found a defendant’s motion to vacate his conviction under C.P.L. § 440.10 on the grounds of ineffective assistance of counsel to be “[un]reviewable on direct appeal since it [was] based on facts dehors the record and trial counsel ... had no opportunity to explain her trial tactics.” People v. Figueroa, 254 A.D.2d 226, 679 N.Y.S.2d 304 (1998). In affirming denial of another such motion in 2003, the First Department noted that defendant’s submissions on his motion “did not include affidavits from trial counsel or from any of the uncalled witnesses.” People v. Rosario, 309 A.D.2d 537, 765 N.Y.S.2d 320 (2003). More recent cases in the Second and Fourth Departments have similarly rejected ineffective assistance of counsel claims based in part on defendant’s failure to provide an attorney affidavit. See People v. Smiley, 67 A.D.3d 713, 886 N.Y.S.2d 893 (2009) (noting that defendant’s allegations “[we]re not supported by any other affidavit or evidence”); People v. DeJesus, 39 A.D.3d 1196, 835 N.Y.S.2d 792 (2007) (noting that defendant “d[id] not include an affidavit from trial counsel”). Moreover, in the opinions cited above, the courts did not mention that an explanation for the lack of an affidavit would have sufficed.
Ironically, the state’s opposition to Jenkins’s section 440.10 motion criticized him for not presenting an attorney affidavit. In that opposition, the government emphasized the absence of the affidavit and speculated that the reason for Jenkins’s failure to attach one was “because defendant knew that if he asked, trial counsel would reply that they had, indeed, discussed maximum and minimum sentences.” J.A. 72-73. However, on appeal, after the affidavit was provided and the speculation *308 proved baseless, the government changed tacks, contending that such an affidavit was not required.
Unsympathetic to Jenkins’s petition, the majority makes much of their view that New York state courts do not “inflexibly” require that defendants claiming ineffective assistance present a supporting affidavit from the challenged attorney. Majority Op. 302-03; See also Jenkins v. Greene, 646 F.Supp.2d 615, 622 (S.D.N.Y.2009) (“[S]uch a requirement is neither statutorily required nor always applied by New York courts” (emphasis added)). The majority cites to cases where New York courts require either an attorney affidavit or an explanation for its absence, and suggest that in lieu of the affidavit, Jenkins should have supplied such an explanation in a sworn statement accompanying his affidavit. The fact that New York courts may not “inflexibly” require such an affidavit sidesteps the fact that some courts apparently do and some do not. My reading of the case law is that such an affidavit probably should be submitted. The majority believes that such an affidavit need not be submitted. If court of appeals judges can honestly disagree over this point of law it seems to me wrong for a court of equity to close the court to a pro se litigant who happened to find himself on the wrong side of this debate. This is especially so where the cost of his choice is an additional forty years of incarceration for a man who, as indicated below, may well have received constitutionally ineffective assistance of counsel. Where equity is the point of departure, this constellation of circumstances is, I believe, extraordinary.
As to the second part of the equitable tolling analysis, I have little difficulty concluding that Jenkins acted with “reasonable diligence” during the period that he seeks to toll. In order to secure the affidavit, Jenkins wrote Smith at least five letters, four of which included an explicit request for a supporting affidavit, and two of which were sent prior to the expiration of the statutory period for bringing a habeas petition. His efforts were certainly reasonable for a prisoner with relatively limited means of communication. Holland, 130 S.Ct. at 2565 (“The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.” (internal citations and quotation marks omitted)); Baldayaque, 338 F.3d at 153 (“The standard is not ‘extreme diligence’ or ‘exceptional diligence,’ it is reasonable diligence.... [T]he district court should ask: did the petitioner act as diligently as reasonably could have been expected under the circumstances? ” (emphasis in original)).
The significant backdrop to this analysis is that had Jenkins been permitted to file his petition, he, on the basis of the record as it now stands, would have presented a compelling case that he received constitutionally ineffective representation. At trial Jenkins was convicted of two counts of assault and sentenced to two consecutive twenty-five year prison terms for a total sentence of fifty years. In his affidavit submitted to the district court in support of his habeas petition, Jenkins maintained that Smith did not inform him that his total sentencing exposure was fifty years. Jenkins argues that Smith conveyed two separate plea offers of eight and seven years to him prior to trial. However, based on Smith’s advice that Jenkins would likely have received a ten to twelve year sentence if he lost at trial, and that he had a “50-50” chance of acquittal, Jenkins declined both plea offers. Notably, Jenkins also submitted to the district court an affirmation from Smith confirming that he communicated various plea offers to Jenkins, but that he “did not inform Mr. Jenkins that his exposure was 50 years.” These facts stand uncontradicted on the current record.
*309 “To advance an ineffective assistance of counsel claim in the context of a plea, the defendant must show that (1) counsel’s performance fell below an objective standard of reasonableness, and (2) but for counsel’s unprofessional errors, the result of the proceeding would have been different.” United States v. Doe, 537 F.3d 204, 213-14 (2d Cir.2008) (citations omitted). With respect to the first prong, this Court has recognized that the Sixth Amendment right to effective assistance of counsel contemplates competent professional advice during plea negotiations. Padilla v. Kentucky, — U.S.-, 130 S.Ct. 1473, 1482-86, 176 L.Ed.2d 284 (2010); United States v. Brown, 623 F.3d 104, 112 (2d Cir.2010). In particular, counsel’s failure to properly advise a client of his sentencing exposure, such as the possibility of consecutive sentences, may indicate constitutionally ineffective assistance. See Purdy v. United States, 208 F.3d 41, 45 (2d Cir.2000) (“[Cjounsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed.” (citations omitted)); see also Davis v. Greiner, 428 F.3d 81, 88-90 (2d Cir.2005); Cullen v. United States, 194 F.3d 401, 404 (2d Cir.1999); United States v. Gordon, 156 F.3d 376, 380 (2d Cir.1998).
With respect to the second prong, “a defendant’s statements that he would have accepted a plea offer in combination with some objective evidence, such as a significant sentencing disparity, is sufficient to support a prejudice finding.” Brown, 623 F.3d at 112 (citation and quotation marks omitted). Here, Jenkins has averred that he would have accepted the plea offer if he knew the length of the sentence he otherwise would have faced. Thus, as a result of apparently inadequate assistance from his trial counsel at a crucial stage of the proceedings, Jenkins is serving what the majority concedes is an “extremely severe” sentence that apparently could have been four or five times shorter had he been appropriately counseled. Majority Op. 304-05.
Holland emphasizes that the role of courts sitting in equity is to “relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules....” Holland, 130 S.Ct. at 2563 (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 248, 64 S.Ct. 997, 88 L.Ed. 1250 (1944)). Holland also emphasizes that “[tjhe flexibility inherent in equitable procedure enables courts to meet new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices.” Id. (internal quotation marks and alterations omitted). This Court has similarly recognized that “[ujnder common law principles it is well established that equitable discretion may sometimes be exercised to avoid harm to ... a party that would be the consequence of the unflinching application of legal principles.” Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 344 (2d Cir.2005). The majority’s approach, I respectfully suggest, neither recognizes nor applies any of these principles which, in my view, tilt sharply in Jenkins’s favor.
At the end of the day Jenkins’s petition might well fail. Most do. However, before being required to spend an additional forty years incarcerated as a result of what could well have been constitutionally ineffective assistance of trial counsel, I would permit his petition, at the very least, to be received and examined by the district court.