**Mansoor RABBANI, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**1:12–CV–390 EAW**
**1:08–CR–118 EAW**

United States District Court, W.D. New York.

Signed 01/11/2016

Paul J. Campana, U.S. Attorney's Office, Buffalo, NY, for Respondent.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

### I. BACKGROUND

Petitioner Mansoor Rabbani ("Petitioner"), was convicted after trial by jury of four offenses, including encouraging or inducing an alien to enter the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (a)(1)(B)(i); bringing or attempting to bring an alien into the United States for the purpose of financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii); making false, fictitious and fraudulent statements or representations or aiding and abetting another in doing so, in violation of 18 U.S.C. § 1001(a)(2) and 2; and using a passport issued to another person or aiding and abetting another person in doing so, in violation of 18 U.S.C. § 1544 and 2. (Dkt. 20; Dkt 60; Dkt. 91 at 3).[1] Petitioner was

---

1. All documents relating to Petitioner's § 2255 motion are filed on the docket for his underlying criminal case, E08–CR–118 EAW. Accordingly, any citations to the record are found at docket number 1:08–CR–118 EAW.

sentenced to 36 months imprisonment. (Dkt. 73 at 2; Dkt. 91 at 3). On April 26, 2012, Petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that his conviction should be vacated because he received ineffective assistance of counsel. (Dkt.91). Because Petitioner's § 2255 motion is untimely, it is dismissed.

## II. PROCEDURAL HISTORY

Petitioner was charged in a four-count indictment on May 8, 2008. (Dkt.1). A superseding indictment was filed on July 9, 2008, which added one count. (Dkt.20). After a five-day jury trial, Petitioner was convicted on counts 1, 3, 4, and 5. (Dkt. 60; Dkt. 91 at 3). On December 30, 2008, Petitioner filed a motion to set aside the judgment, pursuant to Fed.R.Crim.P. 29. (Dkt.62). On May 7, 2009, the Court denied Petitioner's motion. (Dkt.70). Petitioner was sentenced on May 26, 2009, and the Court imposed a sentence of 36 months. Petitioner filed a notice of appeal to the Second Circuit Court of Appeals on June 18, 2009 (Dkt.75), and the Second Circuit affirmed the judgment of the district court on July 19, 2010 (Dkt.89). Petitioner was represented by Kimberly A. Schechter of the United States Federal Public Defender's Office at all stages of the proceedings. (Dkt.11).

Petitioner contends that following the Second Circuit's affirmance of his conviction and sentence, Ms. Schechter informed him that she would no longer be representing him. (Dkt. 99 at ¶ 4). Ms. Schechter also prepared a completed application for *certiorari* to the United States Supreme Court, and instructed Petitioner that he should proceed *pro se*. (*Id.*). Petitioner contends that he signed the forms and gave them to his wife, Ambika Rabbani, to mail to the United States Supreme Court on September 21, 2010, approximately one week after he had self-surrendered at Moshannon Valley Correctional Facility in Philipsburg, Pennsylvania. (*Id.* at ¶ 5).

Petitioner contends that he wrote to the Supreme Court in December 2010, to inquire about the status of his case, but he received no response. (*Id.* at 6). Petitioner contends that he again wrote to the Supreme Court in early March 2011, but received no response. (*Id.* at ¶ 7). Petitioner confirmed with his wife that she sent the papers to the Supreme Court. (*Id.* at ¶ 8). Mrs. Rabbani thereafter called the Supreme Court to inquire as to the status of Petitioner's petition for *certiorari*. (*Id.* at ¶ 9). The clerk informed Mrs. Rabbani that the petition was denied on May 6, 2011. (*Id.*). Mrs. Rabbani also requested a copy of the Court's decision denying *certiorari*, but was informed that the Order was not yet entered on the record, and that Petitioner had one year to file any motion starting from the date of the denial on May 6, 2011. (*Id.*). Petitioner has not provided the Court with a copy of the Supreme Court's Order denying *certiorari*.

On April 26, 2012, Petitioner filed a motion to vacate his sentence, pursuant to 28 U.S.C. § 2255, arguing that he had ineffective assistance of counsel at trial. (Dkt.91). Specifically, Petitioner contends that he received inadequate assistance of counsel because: (1) his attorney failed to travel to Canada to interview Petitioner's brother, or to obtain a camera chip containing evidence that exonerated him; (2) his attorney prevented Petitioner from taking the stand to testify in his own defense; (3) his attorney failed to call Petitioner's wife as a witness to testify in Petitioner's defense; (4) his attorney failed to call any witness to testify in Petitioner's defense, and counsel should have stopped the trial to call or subpoena witnesses; and (5) his attorney failed to explain the difference between going to trial and tak-

ing a six-month plea bargain, and that by going to trial, Petitioner would be exposed to possible deportation. *(Id.* at 4–20).

The Government filed a motion to dismiss the petition as untimely on May 15, 2012, arguing that there was no indication that Petitioner had filed a petition for *certiorari* at the United States Supreme Court. (Dkt.95). The Court directed that Petitioner file a response to the Government's motion to dismiss by August 3, 2012, and that the Government reply by August 15, 2012. (Dkt.97). Petitioner filed his response on August 17, 2012 (Dkt. 99 at 9) and the Government replied on August 27, 2012 (Dkt.98). Petitioner filed a motion for an extension of time to file a response to the Government's motion to dismiss on September 4, 2012. (Dkt. 100 at 6).[2] The case was transferred to the undersigned on January 30, 2015. (Dkt.101).

## III. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may challenge the validity of his sentence by filing a petition for a writ of *habeas corpus,* pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. *See* 28 U.S.C. § 2255(a). "Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States,* 372 F.3d 132, 134 (2d Cir.2004) (citing 28 U.S.C. § 2255)).

Petitioner seeks relief on the basis that he allegedly received ineffective assistance of trial counsel. The Sixth Amendment to the United States Constitution guarantees criminal defendants the effective assistance of counsel. "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. Second, Petitioner must show that his counsel's deficient performance prejudiced his defense. *Id.* at 687, 104 S.Ct. 2052. A petitioner "bears a heavy burden" in proving ineffective assistance of counsel. *United States v. Gaskin,* 364 F.3d 438, 468 (2d Cir.2004). Although a prisoner may not use a § 2255 petition to re-litigate issues that were decided against him on direct appeal, "[a]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

In reviewing a petition for *habeas corpus,* a court must be mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotations and citations omitted); *see also Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.

---

**2.** At the time Petitioner filed his motion for an extension of time to respond to the Government's motion to dismiss, the Court was already in receipt of all papers necessary to resolve the petition, including Petitioner's response that was filed on August 17, 2012 (after the August 3rd deadline). The Court accepts Petitioner's filing, even though it was filed after the deadline set by the Court. Accordingly, Petitioner's motion for an extension of time (Dkt.100) is denied as moot.

1983) ("due to the *pro se* petitioner's general lack of expertise, courts should review habeas petitions with a lenient eye . . . .").

### B. The Petition is Untimely

 The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations on filing a § 2255 petition, which runs from "the date on which the judgment of conviction bec[ame] final." 28 U.S.C. § 2255(f)(1); *see also Marcus v. United States,* No. 14–CV–5780 (ARR), 2015 WL 3869689, at *6 n.10, 2015 U.S. Dist. LEXIS 80875, at *17–18 n.10 (E.D.N.Y. June 22, 2015). For this purpose, an unappealed conviction becomes final "when the time for filing a direct appeal expires." *Moshier v. United States,* 402 F.3d 116, 118 (2d Cir.2005). The AEDPA statute of limitations is considered an affirmative defense. *Acosta v. Artuz,* 221 F.3d 117, 121 (2d Cir.2000); *Nosair v. United States,* 839 F.Supp.2d 646, 650 (S.D.N.Y.2012).

 "It is well established that for purposes of § 2255(f)(1), 'a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction ... [i.e.] 90 days after entry of the Court of Appeals' judgment.'" *Davis v. United States,* No. 07–CR–245S, 13–CV–14S, 2014 WL 2587718, at *1, 2014 U.S. Dist. LEXIS 79096, at *3 (W.D.N.Y. June 10, 2014) (quoting *Clay v. United States,* 537 U.S. 522, 525, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003); 28 U.S.C. § 2101(c)).[3] Defendant's conviction was

affirmed by the Second Circuit Court of Appeals on June 24, 2010. *United States v. Rabbani,* 382 Fed.Appx. 39 (2d Cir. 2010). The Second Circuit's docket reflects that the Summary Order and Judgment was issued on June 24, 2010, and the Judgment Mandate was issued on July 16, 2010.[4] Therefore, Petitioner's conviction became final 90 days after the date of the Judgment, *i.e.,* on September 22, 2010. Accordingly, Petitioner's § 2255 motion to vacate, filed on April 26, 2012, was over seven months late. The petition is untimely on its face. .

Petitioner argues that the Supreme Court clerk's office informed his wife that his petition for *certiorari* was denied on May 6, 2011. (Dkt. 99 at ¶ 9). In support of this contention, Petitioner attaches to his response a signed and notarized (but unsworn) letter from his wife to the Court, which states that she mailed his petition and that the clerk at the Supreme Court informed her that the petition was denied on May 6, 2011 (*see* Dkt. 99 at 10). Aside from this letter, Petitioner has no proof that an appeal to the Supreme Court was ever filed. Indeed, the Court has conducted its own electronic search using Lexis, Westlaw, and PACER, to search both the Second Circuit Court of Appeals and the Supreme Court dockets, and there is no record of a petition for *certiorari* filed by Petitioner. In other words, there is no indication that Petitioner's case was appealed beyond the Second Circuit Court of Appeals, and his case therefore concluded for statute of limitations purposes 90 days

---

**3.** Pursuant to Supreme Court Rule 13.1, "a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."

**4.** Rule 13.3 of the Supreme Court's Rules of Practice clearly states that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed and not from the issuance of the mandate . . . . " Accordingly, Petitioner's 90–day time to file a petition for *certiorari* began running on June 24, 2010.

after the Second Circuit issued the judgment affirming his conviction on June 24, 2010.

## C. Equitable Tolling

█ Petitioner argues that equitable tolling can be used to avoid the bar of the statute of limitations. (Dkt. 99 at 14). In its response, the Government does not specifically address Petitioner's equitable tolling argument, but rather points to the lack of proof Petitioner has supplied relating to his filing of a petition for *certiorari.* (Dkt.98).

█ Equitable relief may be "awarded in the court's discretion only upon consideration of all the facts and circumstances...." *Vitarroz Corp. v. Borden, Inc.,* 644 F.2d 960, 965 (2d Cir.1981). Equitable tolling is available for untimely petitions filed pursuant to AEDPA, *see Green v. United States,* 260 F.3d 78, 82 (2d Cir.2001), but its application "requires an extraordinary obstacle preventing the petitioner from complying with AEDPA's limitations period." *Rosa v. United States,* 785 F.3d 856, 861 n.5 (2d Cir.2015) (citing *Harper v. Ercole,* 648 F.3d 132, 136–39 (2d Cir.2011)).

█ "To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." *Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir.2001) (internal quotations and citation omitted). The Second Circuit Court of Appeals has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway,* 642 F.3d 358, 363 (2d Cir.2011). "Whether a circumstance is 'extraordinary' for purposes of equitable tolling is determined by inquiring 'not how unusual the circumstance alleged ... is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Johnson v. United States,* No. 11–cv–4730(ENV), 2014 WL 4545845, at *5, 2014 U.S. Dist. LEXIS 128141, at *14 (E.D.N.Y. Sept. 12, 2014) (quoting *Diaz v. Kelly,* 515 F.3d 149, 154 (2d Cir.2008)).

█ Egregious conduct on the part of a defendant's attorney, or intentional interference by prison personnel on the verge of a filing deadline, may qualify as sufficiently extraordinary. *See Baldayaque v. United States,* 338 F.3d 145, 152 (2d Cir.2003) ("attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period," but "at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary"); *Valverde v. Stinson,* 224 F.3d 129, 133–34 (2d Cir.2000) (intentional confiscation of a petitioner's legal papers by a corrections officer shortly before the habeas filing deadline was "extraordinary" as a matter of law); *see also Bolarinwa v. Williams,* 593 F.3d 226, 231 (2d Cir.2010) (under appropriate circumstances, a petitioner's mental illness may qualify as extraordinary); *Diaz,* 515 F.3d at 154–55 (prolonged delay by a state court in sending notice of a ruling qualified as extraordinary circumstances). In contrast, " 'a garden variety claim of excusable neglect,' ... and 'the usual problems inherent in being incarcerated' are insufficient to warrant equitable tolling." *Woodason v. United States,* No. 13 Civ.2020(DLC), 10 Cr.1156(DLC), 2014 WL 657529, at *1, 2014 U.S. Dist. LEXIS 21382, at *4 (S.D.N.Y. Feb. 20, 2014) (citations omitted); *see also Moore v. Cook,* No. 09–CV–2381–ENV, 2010 WL 2680328, at *3, 2010 U.S. Dist. LEXIS 66034, at *8 (E.D.N.Y. June 30, 2010) (ignorance of filing deadline is not extraordinary circumstance);

*Thrower v. Laird,* No. 06 Civ. 4864, 2006 WL 3735649, at *2, 2006 U.S. Dist. LEXIS 90930, at *4 (S.D.N.Y. Dec. 14, 2006) (where the petitioner contended that "he never received the New York Court of Appeals' decision denying leave to appeal, and the decision was 'unpublished,'" petitioner could not show facts justifying tolling of the AEDPA limitations period), *adopted,* 2007 WL 294096, 2007 U.S. Dist. LEXIS 6826 (S.D.N.Y. Jan. 29, 2007).

 "The presence of extraordinary circumstances is not enough ... to justify the application of equitable tolling." *Baldayaque,* 338 F.3d at 153. In addition, "[t]o be eligible for equitable tolling, a petitioner must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'" *Rivera v. United States,* 448 Fed.Appx. 145, 146 (2d Cir.2011) (quoting *Valverde,* 224 F.3d at 134). "The standard is not 'extreme diligence' or 'exceptional diligence,' it is *reasonable* diligence." *Baldayaque,* 338 F.3d at 153. " '[I]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.' " *Id.* at 150 (quoting *Hizbullahankhamon,* 255 F.3d at 75). "The requisite causal link may be lacking 'where the identified extraordinary circumstances arose and concluded early within the limitations period,' because in such cases 'a diligent petitioner would likely have no need for equity to intervene to file within the time remaining to him.' " *Woodason,* 2014 WL 657529, at *2, 2014 U.S. Dist. LEXIS 21382, at *4–5 (quoting *Harper,* 648 F.3d at 137).

Petitioner does not argue that his counsel erred in informing him when he needed to file his motion to vacate, or that he was unaware of the one-year statute of limitations. As noted above, neither of those circumstances would qualify as extraordinary. Rather, Petitioner appears to argue that although his wife sent his petition for *certiorari* to the Supreme Court, Petitioner was unable to obtain information bearing on the existence of his appeal to the Supreme Court, and/or the application was never filed.

"The burden lays with petitioner to establish the entitlement to equitable tolling," *see Sorce v. Artuz,* 73 F.Supp.2d 292, 299 (E.D.N.Y.1999), and Petitioner has failed to sustain this burden through either facts in support of this entitlement, or case law standing for the proposition that he would be entitled to tolling under such circumstances. The only evidence Petitioner submits are his own conclusory statements and his wife's notarized letter, but there is no documentation to support Petitioner's claims. Petitioner has failed to submit any official proof of mailing of the petition for *certiorari* to the Supreme Court. Further, although Petitioner contends that his petition was mailed over five years ago in September 2010, it has yet to be received by the Supreme Court or returned to Petitioner. Finally, although Petitioner contends that his wife spoke with the clerk at the Supreme Court, who informed her that his petition for *certiorari* was denied in May 2011, this Court's own electronic legal research reveals that no petition for *certiorari* was ever filed at the Supreme Court. Moreover, Petitioner offers no proof of any documentation received by him or his wife from the Supreme Court. Construing Petitioner's allegations and evidence in his favor, he has

failed to demonstrate the presence of extraordinary circumstances justifying the tolling of the one-year statute of limitations deadline.

Although the Court has not found a case directly on point, existing case law suggests that Petitioner's circumstances are not extraordinary. *See United States v. Cicero,* 214 F.3d 199, 204–05 (D.C.Cir. 2000) (denying equitable tolling for § 2255 petition where petitioner entrusted his legal documents to a jailhouse lawyer); *Hamilton v. Warden of Clinton Corr. Facility,* 573 F.Supp.2d 779, 781 (S.D.N.Y. 2008) (declining to find extraordinary circumstances where the petitioner attributed his untimely petition to the failure of an inmate law clerk to file a state writ of error on his behalf); *Sturgis v. United States,* 04–CR–6140, 2008 WL 2783394, at *6, 2008 U.S. Dist. LEXIS 54327, at *15–16 (W.D.N.Y. July 16, 2008) (denying request to apply equitable tolling for § 2255 petition based upon petitioner's "wholly incredible" claim that his attorney misled him into believing that a petition for *certiorari* to the United States Supreme Court was pending); *Eiland v. Conway,* No. 03 Civ. 4208(GEL), 2004 WL 1961564, at *5, 2004 U.S. Dist. LEXIS 17699, at *18–19 (S.D.N.Y. Sept. 2, 2004) ("[e]quitable tolling cannot be based on a petitioner's mistaken belief that a state application is pending when petitioner himself has failed properly to file the state application," and "in the absence of a clear record about the nature of the defects in [petitioner's] application, or even the date on which the application was rejected, there is no basis for determining that the clerk's delay, if any, qualifies as an 'extraordinary' circumstance."). In other words, "[Petitioner] had ultimate responsibility for managing the preparation and timely filing of his habeas petition, and . . . entrusting some aspect of it to another person . . . [does not] constitute[ ] sufficient 'extraor-

dinary circumstances' to warrant equitable tolling." *Hamilton,* 573 F.Supp.2d at 781.

Petitioner cites in his memorandum of opposition case law standing for the proposition that equitable tolling is warranted where a petitioner was not notified of a court's decision rendering his conviction final. (*See* Dkt. 99 at 7 (citing *Woodward v. Williams,* 263 F.3d 1135 (10th Cir.2001) & *Phillips v. Donnelly,* 216 F.3d 508 (5th Cir.2000)). Petitioner is correct that "[c]ourts in this and other circuits have applied equitable tolling where a petitioner was not notified of a court's decision rendering his conviction final." *Nevarez v. Conway,* No. 09 Civ. 8220(LBS), 2011 WL 102711, at *3, 2011 U.S. Dist. LEXIS 1540, at *7–8 (S.D.N.Y. Jan. 5, 2011) (citing *Diaz,* 515 F.3d at 154–55 (where Appellate Division failed to send petitioner notice of its order denying leave to appeal until petitioner inquired about the status of his case six months later, equitable tolling was appropriate); *Miller v. Collins,* 305 F.3d 491, 496 (6th Cir.2002) (equitable tolling applicable where court was "satisfied that [petitioner] did not have knowledge of the Ohio Court of Appeals' decision regarding his Rule 26(B) application," and petitioner "acted diligently to protect his rights both before and after receiving notice"); *Knight v. Schofield,* 292 F.3d 709, 711 (11th Cir. 2002) (where petitioner sought information about status of his case and "had no way of knowing that his state remedies had been exhausted" until clerk responded, equitable tolling was permissible)).

These cases are distinguishable. Petitioner contends that he exhausted his remedies when on May 6, 2011, the Supreme Court allegedly denied his petition for *certiorari* ; he does not allege that he was *not* informed of when his conviction became final. (*See* Dkt. 99 at ¶¶ 8–9). Moreover, in the nearly five years that have passed since Petitioner claims his conviction became final in 2011, there has been no

indication that the Supreme Court simply neglected to inform Petitioner that his conviction was final. To the contrary, the evidence shows that Petitioner never filed a petition for *certiorari* in the first instance. Accordingly, Petitioner has failed to demonstrate extraordinary circumstances.

■ Further, Petitioner offers no evidence to support a claim of reasonable diligence, other than his assertion that he wrote to the Supreme Court on two occasions and never heard back. For example, Petitioner does not state that he attempted to re-submit his petition, or that he contacted Ms. Schechter for clarification of her instructions. Although Petitioner claims that he allegedly learned from his wife that his petition for *certiorari* was denied on May 6, 2011, Petitioner did not immediately file a § 2255 motion (at which point the petition would have been timely, since Petitioner had one year from September 22, 2010, to file the petition). *See* Part III(B), *supra*. Instead, he waited almost one year before doing so. Accordingly, Petitioner's request to invoke equitable tolling also fails for a lack of reasonable diligence. *See Williams v. Breslin*, No. 03–Civ.–1848(RWS), 2004 WL 2368011, at \*7, 2004 U.S. Dist. LEXIS 20991, at \*7 (S.D.N.Y. Oct. 20, 2004) (even if petitioner's counsel's conduct was extraordinary, equitable tolling denied in part because the misinformation "transpired before the one-year limitations period· ... had begun to run" and petitioner failed to show that it prevented him from filing a timely petition); *see also Hamilton*, 573 F.Supp.2d at 781 ("once the Court of Appeals' judgment became final there were no further prerequisites or other legal impediments preventing [the petitioner] from filing a habeas petition. Nor, assuming there were some substantive relationship between the two applications, does [the petitioner] make clear why, after his repeated requests to the inmate law clerk went unanswered during a period of about six months, he could not have proceeded to file the writ of error himself.").

Construing Petitioner's allegations and evidence in his favor, he has failed to demonstrate that he was reasonably diligent in attempting to meet the one-year statute of limitations deadline for filing his § 2255 motion. Accordingly, Petitioner is not entitled to equitable tolling.

■ In the "Conclusion" section of his response to the Government's motion to dismiss, Petitioner asks that the Court in the alternative grant him an evidentiary hearing "to test the truthfulness of the case at bar." (Dkt. 99 at 8). " 'A petition for habeas corpus relief requires an evidentiary hearing to resolve disputed issues of fact unless the record shows that the petitioner is not entitled to relief.' " *Johnson v. United States*, No. 15 Civ. 1494(SAS), 10 Cr. 973(SAS), 2015 WL 7169589, at \*2, 2015 U.S. Dist. LEXIS 153734, at \*5 (S.D.N.Y. Nov. 12, 2015) (quoting *Ortega v. United States*, 897 F.Supp. 771, 781 (S.D.N.Y.1995)). "However, a court may deny a section 2255 petition without holding a hearing where: (1) the petition lacks 'meritorious allegations' that can be established by 'competent evidence;' (2) the case files and records conclusively demonstrate that the petitioner is not entitled to relief; or (3) the allegations of the petition, even if accepted as true, would not entitle the petitioner to relief." (*Id.*) (citations omitted).

■ "The decision as to whether an evidentiary hearing is warranted is ... consigned to the district court...." *Bolarinwa*, 593 F.3d at 232. The Court has reviewed in detail all of the submissions by Petitioner and the Government, and finds that those submissions provide a sufficient record for the Court to determine that the petition is untimely. Accordingly, to the extent Petitioner moves for an evidentiary hearing, such motion is denied.

Having dismissed the petition, the Court must determine whether to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(B). The Court can only issue a certificate of appealability if it determines that Petitioner has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Second Circuit Court of Appeals has explained that "a 'substantial showing' does not compel a petitioner to demonstrate that he would prevail on the merits, but merely that the issues involved in his case 'are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'" *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)) (alteration in original). Based on the record in this case, the Court declines to issue a certificate of appealability.

The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Fed. R.App. P. 24.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate (Dkt.91) is denied, and the petition is dismissed. The Clerk of Court is directed to close the case.

SO ORDERED.