09-3623-pr
Jenkins v. Greene

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: April 15, 2010                    Decided: December 23, 2010)

Docket No. 09-3623-pr

_____

TAIWU JENKINS,

*Petitioner-Appellant,*

— v.—

GARY GREENE,

*Respondent-Appellee.*

_____

B e f o r e:

B.D. PARKER, LIVINGSTON, and LYNCH, *Circuit Judges*.

_____

Appellant was sentenced after trial to two consecutive twenty-five year prison

terms. He argues that he received ineffective assistance of counsel, in that his trial

counsel failed to inform him of his sentencing exposure and he would have accepted a

plea offer had he known of that exposure. The district court denied a writ of habeas

corpus, holding that appellant's failure to seek the writ within the one-year limitations

period was not excused by equitable tolling (Robert W. Sweet, *Judge*).

AFFIRMED.

Judge Parker dissents in a separate opinion.

MALVINA NATHANSON, New York, New York, *for Petitioner-Appellant.*

ASHLYN DANNELLY (Barbara D. Underwood, Solicitor General; Roseann B. MacKechnie, Deputy Solicitor General for Criminal Matters, *on the brief*), *for* Andrew M. Cuomo, Attorney General of the State of New York, New York, New York, *for Respondent-Appellee.*

GERARD E. LYNCH, *Circuit Judge*:

Petitioner-appellant Taiwu Jenkins was sentenced in 2000 to two consecutive twenty-five year prison terms after a jury convicted him of two counts of assault in the first degree for slashing two victims' faces with a razor blade. In 2005, Jenkins filed a pro se motion in state court, seeking to vacate his judgment of conviction on the ground that his trial attorney had not accurately informed him of his sentence exposure, and that, had the attorney done so, Jenkins would have accepted a plea offer from the government rather than go to trial. After the state courts denied his motion, Jenkins filed a petition for writ of habeas corpus in the Southern District of New York, which was denied on the ground that his petition was untimely under 28 U.S.C. § 2244(d)(1). Jenkins now argues that state law required him to support his post-trial motion with an affidavit from the very attorney whose performance he was impugning, and that the attorney's failure to reply in a timely manner to his letters requesting such an affidavit constituted an extraordinary circumstance warranting equitable tolling of the limitations period. We conclude that

2

Jenkins's argument fails, because New York law in fact permitted him to support his motion with either an affidavit or an explanation of why such an affidavit was unavailable. He therefore could have filed on time in spite of the attorney's dereliction and is not entitled to equitable tolling.

**BACKGROUND**

On August 10, 2000, Taiwu Jenkins was sentenced to two consecutive prison terms of twenty-five years, after being found guilty by a jury of two counts of assault in the first degree. The conviction arose from an incident in October 1998 in which Jenkins asked two people for change inside a grocery store in upper Manhattan. After the two refused, Jenkins argued with them, followed them outside the store, and slashed both victims' faces with a razor blade. Each needed approximately 150 stitches to close the resulting wounds.

Jenkins unsuccessfully appealed his conviction to the Appellate Division. See People v. Jenkins, 756 N.Y.S.2d 151 (1st Dep't), leave to appeal denied, 100 N.Y.2d 583 (2003). Jenkins subsequently filed a pro se petition for a writ of habeas corpus in the Southern District of New York, raising the same arguments against his conviction that he made in his direct appeal. The district court granted Jenkins's request for appointment of counsel. Jenkins's counsel then asked the district court to stay the petition while Jenkins exhausted state court remedies "relating to an ineffective assistance of counsel

3

argument." The district court dismissed the petition on May 13, 2005, with leave to reopen.

Two months later, in July 2005, Jenkins moved pro se in state court under N.Y. C.P.L. § 440.10 to vacate the judgment of conviction, claiming that his trial counsel, Oliver A. Smith, provided ineffective assistance by failing to tell him that if he were convicted after trial, he faced a maximum sentence of twenty-five years on each count of assault.[1] Jenkins asserted that Smith conveyed to him two plea offers – one of eight years, then one of seven years[2] – and advised him that "the judge would probably give [him] 10 to 12 years" if he were convicted at trial. Jenkins maintained that, had Smith advised him as to his true sentencing exposure, he would have accepted one of the offered plea bargains.

Jenkins included with his motion two letters: one from Jenkins to Smith dated April 17, 2005, and a reply from Smith dated April 21, 2005. The April 17 letter repeatedly questions Smith why he failed to tell Jenkins that his total sentencing exposure was fifty years, and asks Smith for any assistance he could offer, but does not ask for an affidavit or other formal statement from Smith verifying that he had not told Jenkins of

---

[1] Smith represented Jenkins through trial, but did not represent him at his sentencing or on appeal.

[2] Respondent advised the district court that no records of a second plea offer exist in the district attorney's files.

4

his full sentence exposure. Smith's response explains that he was surprised at the length of Jenkins's sentence. Smith wished Jenkins luck in his petition and ended the letter by stating "if there is anything that I can do to assist you in that regard, then please let me know."[3]

The state court denied Jenkins's motion on October 27, 2005. Jenkins sought leave to appeal from the denial of his motion, asserting that in May 2005 he had requested an affidavit from Smith attesting that he had not informed Jenkins of his sentence exposure, but that Smith had not responded to the request. The Appellate Division denied leave to appeal on June 6, 2006.

Almost three weeks later, Jenkins filed a second pro se habeas corpus petition in the Southern District of New York. He again raised his original challenges to his conviction, but added an ineffective assistance of counsel claim based on Smith's failure to inform him of his sentence exposure. In September, Jenkins wrote to the court that he had obtained new evidence with respect to his prior state-court motion, and requested that the federal habeas petition be held in abeyance until the state court had ruled on his renewed motion. The district court granted the stay, conditioned on Jenkins's return to the district court within thirty days of exhausting his state remedies.

---

[3] Smith's letter also countered Jenkins's suggestion that he failed to put on the strongest possible case, explaining that in his opinion the case was lost because the main witness on Jenkins's behalf was caught in a lie.

Meanwhile, Jenkins moved in state court to renew his § 440 motion based on purported newly-discovered evidence. Jenkins attached two letters to Smith, dated May 10, 2005 and June 12, 2006, asking for an affidavit. Jenkins also attached an affirmation from Smith, dated July 21, 2006, attesting that he had not informed Jenkins that his exposure was fifty years. The state court denied Jenkins's motion to renew, and the Appellate Division again denied leave to appeal.

Twenty days after the Appellate Division ruling, Jenkins informed the district court that he had exhausted his ineffective assistance claim. In January 2008, Jenkins retained new counsel, who filed supplemental papers dropping all but the ineffective assistance claims and including a supplemental affidavit by Jenkins stating that he had not been informed that his total sentence exposure was fifty years. Counsel also attached an affirmation by Dominic J. Profaci, who briefly represented Jenkins before his indictment, stating that in his brief representation of Jenkins, he did not recall discussing sentence exposure with him.

After the government submitted a memorandum of law arguing that the ineffective assistance claim was untimely, Jenkins argued in reply that he was entitled to equitable tolling. Jenkins submitted further supplemental materials with his reply, including an affirmation by Jenkins's wife stating that Smith had told Jenkins his sentence exposure was around ten years and two letters from Jenkins to Smith dated July 25, 2003 and

February 18, 2004, both requesting an affidavit.

The district court denied Jenkins's petition as untimely. See Jenkins v. Greene, 646 F. Supp. 2d 615 (S.D.N.Y. 2009). The court found that while Jenkins had until October 15, 2004 to file a petition raising his ineffective assistance of counsel claims, he did not file that claim until June 29, 2006. Id. at 620. The court also rejected Jenkins's argument that his ineffective assistance of counsel claim related back to his initial petition pursuant to Federal Rule of Civil Procedure 15(c)(1)(B), finding that the ineffective assistance claim did not arise from the same common core of operative facts as his claim in his initial petition that his sentence was excessive. Id. at 621. Finally, the district court rejected Jenkins's argument that he was entitled to equitable tolling, stating that the court was "not persuaded that the difficulty Jenkins had in obtaining the affidavit from [his trial counsel] constitutes an extraordinary circumstance." Id. at 622.

**DISCUSSION**

**I. Standard of Review**

The Supreme Court recently confirmed that equitable tolling applies to the 1-year limitations period contained in 28 U.S.C. § 2244(d)(1). Holland v. Florida, 130 S. Ct. 2549, 2560 (2010). However, tolling is appropriate "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and *prevented timely filing*." Id. at 2562 (emphasis added), quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Where a district court

denies equitable tolling as a matter of law, we review the decision de novo. See Belot v. Burge, 490 F.3d 201, 206 (2d Cir. 2007). If the district court denied equitable tolling on the basis of a factual finding, however, we review the factual finding for clear error. See id. If the district court declined to toll in the exercise of its discretion, we apply an abuse of discretion standard. See Saunders v. Senkowski, 587 F.3d 543, 549-50 (2d Cir. 2009). We need not decide whether the district court's conclusion that Jenkins did not demonstrate extraordinary circumstances prevented him from making his claim is a legal or discretionary one. Because we agree with the district court's conclusion, we would affirm regardless of the standard of review applied.

**II. Analysis**

A federal habeas corpus petition must be filed within one year of the latest of four dates, in Jenkins's case October 15, 2003, when his time to seek a writ of certiorari to the Supreme Court expired.[4] See 28 U.S.C. § 2244(d)(1)(A) (specifying that one date from which the limitation period may run is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review").

---

[4] Jenkins thus had until October 15, 2004 to file a federal habeas corpus petition. Jenkins was required to exhaust his ineffective assistance claim in state court before filing the federal petition, but the one-year limitations period would have been statutorily tolled during the pendency of the state proceedings. See 28 U.S.C. § 2244(d)(2). Here, however, Jenkins did not even present his ineffective assistance motion to the state court until July 2005. In effect, therefore, the issue before us is whether an extraordinary circumstance prevented Jenkins from filing his state motion until that time.

8

Jenkins does not now dispute that he raised the ineffective assistance of counsel claim outside this time period, and no longer contends that this new argument relates back to the filing of his original petition raising other issues.  He instead argues that he is entitled to equitable tolling of the statutory period.  This argument is unavailing.

Tolling of the limitations period is applied only in "rare and exceptional" circumstances.  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).  A litigant seeking equitable tolling must show both that he "diligently" pursued his rights and that "some extraordinary circumstance . . . prevented timely filing."  Holland, 130 S. Ct. at 2562 (internal quotation marks omitted); see also Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010).  A petitioner seeking equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."  Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000).

We need not address whether Jenkins was diligent in pursuing his rights, as his argument for equitable tolling fails on the second element: Jenkins has not shown that an extraordinary circumstance stood in the way of his pursuing his ineffective assistance of counsel claim.  Jenkins argues that he faced an extraordinary circumstance because, in order to present his claim of ineffective assistance of counsel to the New York courts (as he was required to do in order to exhaust his state remedies before seeking federal relief),

9

New York law required him to provide an affidavit from the attorney whose effectiveness

is being disputed, and he faced "particular difficulties" obtaining such an affidavit from

Smith.

It is simply not true, however, that New York law required defendants to present

an affidavit from the allegedly ineffective counsel.  The very cases on which Jenkins

himself relies are clear that the New York courts do not inflexibly require that defendants

claiming ineffective assistance must present a supporting affidavit from the challenged

attorney.  No doubt recognizing that obtaining such an affidavit may prove difficult, the

New York courts have expressly stated that *either* an affidavit from counsel *or* an

explanation of why such an affidavit is not available is acceptable.  That is the specific

holding of People v. Morales, 58 N.Y.2d 1008 (1983), the New York Court of Appeals

decision that Jenkins maintains created the affidavit requirement:

> Because defendant failed to submit an affidavit from the attorney
> who represented him at plea and sentence *or offer an explanation of*
> *his failure to do so*, it cannot be said that as to defendant's failure to
> appeal the *coram nobis* Judge erred in denying the application
> without a hearing.

Id. at 1009 (emphasis added).

Indeed, in 2001, the First Department held that summary denial of a § 440 motion

where the defendant provided an explanation for his failure to provide an affidavit rather

than an affidavit was an abuse of discretion.  The court stated:

> It is true that ordinarily a complete record adduced through a

motion to vacate the judgment of conviction pursuant to CPL 440.10, which includes an affidavit from trial counsel explaining his or her trial tactics, is necessary in order to properly evaluate a claim of ineffective assistance of counsel. The failure to present such an affidavit from the attorney or an explanation for the failure to do so has been held to justify denial of a defendant's motion without a hearing. In the instant case, however, defendant provided a viable explanation for the failure to include such affidavit – i.e., counsel's disbarment prior to defendant's bringing the motion, buttressed by the complaint filed with the Grievance Committee regarding Rojas' conduct. It was, therefore, an abuse of discretion for the court to summarily deny defendant's Section 440.10 motion on the basis of this procedural deficiency.

People v. Gil, 729 N.Y.S.2d 121, 125 (1st Dep't 2001). New York courts have repeatedly recited the rule that either an attorney's affidavit or an explanation for its absence is required. See, e.g., People v. Johnson, 739 N.Y.S.2d 381, 383 (1st Dep't 2002) (affirming trial court's denial of motion to vacate conviction due to ineffective assistance because defendant "failed to include an affidavit of his trial counsel . . . or an explanation as to why such affidavit was not included"); People v. Hunt, No. 4857/84, 2007 WL 1558868, at *7 (Sup. Ct. Bronx Co. Apr. 24, 2007) (noting defendant's failure to submit affidavit and citing Morales's "holding that Defendant's failure to supply attorney's affirmation or explain such failure warranted summary denial of motion"); see also People v. Radcliffe, 749 N.Y.S.2d 257, 258 (2d Dep't 2002) ("[T]his court has not required affidavits of counsel where, as here, the defendant is raising an ineffective

assistance claim based on an alleged error or omission of trial counsel.").[5]

A requirement that a defendant alleging ineffective assistance of counsel must either submit an affidavit from his attorney or an explanation of why he cannot present such an affidavit from his attorney is not is not an extraordinary circumstance that "prevented [Jenkins from] timely filing" his claim for relief. Holland, 130 S. Ct. at 2562.

---

[5] The cases cited by the dissent do not support the contention that an attorney's affidavit is inflexibly required. In some of the cases cited, the New York courts addressed the merits of the underlying ineffective assistance claim despite the lack of an attorney affidavit. For example, in People v. Rosario, the Appellate Division held that "[t]he trial record establishe[d] that [Rosario] received effective assistance and that there are reasonable strategic explanations for trial counsel's decision not to call certain witnesses." 765 N.Y.S.2d 320, 322 (1st Dep't 2003) (internal citation omitted). Only after rejecting the claim on the merits did the court note that Rosario's "submissions on his motion, which did not include affidavits from trial counsel *or from any of the uncalled witnesses*, did not substantiate his claims and did not warrant a hearing." Id. (emphasis added). Thus the court did not require an attorney affidavit as a prerequisite to reaching the merits, and, to the extent the absence of an attorney affidavit was relevant at all, the court expressly treated other evidence – such as the affidavit submitted in this case by Jenkins's wife – as an alternative to an attorney affidavit. See also People v. Smiley, 886 N.Y.S.2d 893, 893 (2d Dep't 2009) ("[Smiley's] self-serving allegations [were] not supported by *any other affidavit or evidence*, and under all the circumstances attending the case, there is no reasonable possibility that such allegations are true." (emphasis added)). The other cases cited by the dissent merely mention the lack of an attorney affidavit, but do not hold that such an affidavit is required. See People v. De Jesus, 835 N.Y.S.2d 792, 792 (4th Dep't 2007) (defendant's "submissions, which do not include an affidavit from trial counsel, are insufficient to warrant a hearing"); People v. Figueroa, 722 N.Y.S.2d 336, 338 (Sup. Ct. Bronx Co.), aff'd, 679 N.Y.S.2d 304 (1st Dep't 1998) (rejecting ineffective assistance claim on the merits after noting that Figueroa failed to submit an affirmation from his former attorney "and . . . *offered absolutely no explanation for his failure to do so*" (emphasis added)). These cases demonstrate, at best, that an attorney affidavit would have aided Jenkins's attempts to secure relief on his ineffective assistance claim; they do not show that such an affidavit was required before the state court would address the merits of that claim. The mere possibility that a state court will deny the claim does not constitute an extraordinary circumstance that prevents a defendant from raising it.

12

Jenkins could have timely filed his motion in state court accompanied by a sworn statement explaining that he was unable to secure an affidavit from Smith because Smith had failed to provide one despite Jenkins's repeated timely requests.[6] He therefore cannot show a causal relationship between the alleged extraordinary circumstance and the lateness of his filing. See Valverde, 224 F.3d at 134.

As our dissenting colleague points out, this conclusion is harsh in that it prevents Jenkins from challenging an extremely severe sentence that may very well have been the result of an ineffective attorney.[7] That, however, is the consequence of Congress's decision to impose a limitations period on petitions for habeas corpus. Such limitations statutes by their nature preclude sympathetic or meritorious claims as well as frivolous

---

[6] Respondent contends that the only letters to Smith asking for an affidavit that are dated within the limitations period, which were not provided by Jenkins to any court until after respondent raised the timeliness objection to his renewed federal habeas petition in 2008, are fabrications. For purposes of this appeal, we assume the truth of Jenkins's assertion that he made these requests of Smith on or about the dates that appear on the letters.

[7] We express no view, of course, on the merits of Jenkins's claim. In order to obtain habeas relief, Jenkins would have to establish not only that counsel fell below acceptable standards of performance in not advising him of his potential exposure after trial, but also that he was prejudiced in that he would have accepted a more favorable plea offer if he had been properly advised. See United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998) (holding that petitioner suffered prejudice "if his reliance on [counsel's] advice affected the outcome of the proceedings"). As noted above, it is disputed whether there ever was such a plea offer. Moreover, in characterizing the sentence as severe, we do not suggest that the sentence was unfair or excessive; the record before us is insufficient to form any judgment on that subject. We note only that the sentence is very long, and that the habeas statute of limitations prevents a federal inquiry into a claim that raises a non-frivolous constitutional question.

ones.  And the doctrine of equitable tolling does not permit us to excuse compliance with the statute whenever a potentially meritorious claim is at stake, or whenever a petitioner faces an especially severe sentence.  Nor does that doctrine allow tolling whenever a petitioner must face the daunting procedural obstacles to obtaining habeas review without the assistance of counsel.  See Smith, 208 F.3d at 18 (holding that petitioner's pro se status did not merit equitable tolling), citing Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) ("We have held that neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.").  Although we are mindful that equitable procedure demands flexibility in the approach to equitable intervention, see Holland, 130 S. Ct. at 2563, that flexibility cannot stretch beyond the requirement that an extraordinary circumstance prevent timely filing.  Jenkins did not file his federal petition within the allowable time limit, and his explanation for his failure to do so boils down to the claim that he was thwarted by a mistaken reading of New York case law to impose a requirement that did not in fact exist.  Under the law, such a mistaken belief is not a basis for equitable tolling.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED.

14

BARRINGTON D. PARKER, Circuit Judge, dissenting:

Because I believe that Jenkins's petition was entitled to the benefits of equitable tolling, I respectfully dissent. The majority's approach in my view incorporates two significant errors. It incorrectly analyzes a confusing body of New York case law dealing with the procedural prerequisites to pursuing an ineffective assistance of counsel claim in state court. And more importantly, it fails meaningfully to engage in the equitable analysis required by *Holland v. Florida*, 130 S. Ct. 2549 (2010).

*Belot v. Burge* sets out a three-part standard for reviewing a district court's decision not to equitably toll AEDPA's limitations period. 490 F.3d 201, 206-07 (2d Cir. 2007). First, "[i]f a district court denies equitable tolling on the belief that the decision was compelled by law, that the governing legal standards would not permit equitable tolling in the circumstances—that aspect of the decision should be reviewed *de novo*." *Id.* at 206. Second, "if the decision to deny tolling was premised on a factual finding, the factual finding should be reviewed for clear error." *Id.* Third, "if the court has understood the governing law correctly, and has based its decision on findings of fact which were supported by the evidence, but the challenge is addressed to whether the court's decision is one of those within the range of possible permissible decisions, then appellate review will be . . . for abuse of discretion." *Id.* at 206-07.

Although the majority declines to determine the appropriate standard of review, I think the district court's decision to deny equitable tolling should be reviewed *de novo* since it was based on an incorrect interpretation of what the law required. The district court held that petitioner's inability to satisfy a state law requiring that he provide an attorney affidavit in order to seek post-conviction relief on the grounds of ineffective assistance of counsel *could not* constitute an

1

extraordinary circumstance. In the district court's view "holding that such a state law requirement constitutes an extraordinary circumstance would mean that every petitioner claiming ineffective assistance of counsel would be able to equitably toll their claim pending receipt of an affidavit." *See Belot*, 490 F.3d at 207-08 (finding district court decision that temporary prison lockdown could not qualify as an extraordinary circumstance warranting equitable tolling was "arguably a matter of law"). After *Holland*, which was decided after the district court's opinion, this analytically rigid approach employed by the district court is no longer appropriate. As Justice Breyer pointed out, courts considering whether to toll AEDPA's limitations period are courts of equity whose hallmarks are "flexibility," the avoidance of "mechanical rules," and the recognition that "specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 130 S. Ct. at 2563 (citations omitted). The district court should have, but did not, examine the equities specific to Jenkins's application. Instead, it treated him as a stereotypical applicant. Applying the correct governing legal standard, I believe that Jenkins was entitled to equitable tolling. *See Belot*, 490 F.3d at 206-07.

A petitioner seeking equitable tolling must show (1) that extraordinary circumstances prevented him from filing his petition on time, and (2) that he acted with reasonable diligence in pursuing his rights during the period he seeks to toll. *Holland*, 130 S. Ct. at 2562; *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008); *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003). Jenkins, in my view, meets both parts of this test.

As to the first part, Jenkins believed, quite reasonably, that in order to bring an ineffective assistance of counsel claim in state court, he was required to provide an affidavit from Oliver Smith, his trial attorney, concerning the advice or strategy being challenged. Jenkins pursued the

affidavit but, despite diligent efforts, was unable to reach his lawyer for nearly two years. For example, in a letter to Smith dated July 25, 2003, approximately one week after Jenkins's application for leave to appeal his state court conviction was denied, Jenkins wrote, "Mr. Smith you never told me I was facing 50 years imprisonment. You told me 10-12 years is what I was facing if we loss [sic] trial. I need an affidavit from you stating this or the part of the record that states this." Jenkins sent a follow up letter making a similar request several months later. Notably, Jenkins sent both of these letters prior to the expiration of the statutory period for filing a habeas petition raising an ineffective assistance of counsel claim. Moreover, even after finally receiving a response from Smith, it took two more letters from Jenkins before he finally received the requested affidavit. Smith's affidavit, which confirmed Jenkins's contention that he had not been advised of his sentencing exposure, was dated nearly three years after his first request. These circumstances support equitable tolling. *See Baldayaque*, 338 F.3d at 152-53 ("[A]n attorney's conduct, if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling to the one-year limitations period of AEDPA."); *see also Holland,* 130 S. Ct. at 2563-64 ("Several lower courts have specifically held that unprofessional attorney conduct may, in certain circumstances . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." (citing cases)).

The New York case law on whether an attorney affidavit is actually required under these circumstances is, charitably stated, confused. Any reasonably cautious lawyer reviewing the New York case law on this issue could easily conclude that such an affidavit was required or that, at a minimum, proceeding without such an affidavit was an imprudent step that courted summary

3

denial of the application. Similarly, a *pro se* petitioner, attempting to parse this body of case law could easily have concluded that an affidavit or other explanation from the attorney whose assistance is being challenged was required, and that failure to provide one would have been fatal to an ineffective assistance of counsel claim. For example, in 1998, the First Department found a defendant's motion to vacate his conviction under C.P.L. § 440.10 on the grounds of ineffective assistance of counsel to be "[un]reviewable on direct appeal since it [was] based on facts *dehors* the record and trial counsel . . . had no opportunity to explain her trial tactics." *People v. Figueroa*, 679 N.Y.S.2d 304 (N.Y. App. Div. 1998). In affirming denial of another such motion in 2003, the First Department noted that defendant's submissions on his motion "did not include affidavits from trial counsel or from any of the uncalled witnesses." *People v. Rosario*, 765 N.Y.S.2d 320 (N.Y. App. Div. 2003). More recent cases in the Second and Fourth Departments have similarly rejected ineffective assistance of counsel claims based in part on defendant's failure to provide an attorney affidavit. *See People v. Smiley*, 886 N.Y.S.2d 893 (N.Y. App. Div. 2009) (noting that defendant's allegations "[we]re not supported by any other affidavit or evidence"); *People v. DeJesus*, 835 N.Y.S.2d 792 (N.Y. App. Div. 2007) (noting that defendant "d[id] not include an affidavit from trial counsel"). Moreover, in the opinions cited above, the courts did not mention that an explanation for the lack of an affidavit would have sufficed.

Ironically, the state's opposition to Jenkins's section 440.10 motion criticized him for not presenting an attorney affidavit. In that opposition, the government emphasized the absence of the affidavit and speculated that the reason for Jenkins's failure to attach one was "because defendant knew that if he asked, trial counsel would reply that they had, indeed, discussed maximum and minimum sentences." J.A. 72-73. However, on appeal, after the affidavit was provided and the

4

speculation proved baseless, the government changed tacks, contending that such an affidavit was not required.

Unsympathetic to Jenkins's petition, the majority makes much of their view that New York state courts do not "inflexibly" require that defendants claiming ineffective assistance present a supporting affidavit from the challenged attorney. Majority Op. __; *See also Jenkins v. Greene*, 646 F. Supp. 2d 615, 622 (S.D.N.Y. 2009) ("[S]uch a requirement is neither statutorily required nor *always* applied by New York courts" (emphasis added)). The majority cites to cases where New York courts require *either* an attorney affidavit *or* an explanation for its absence, and suggest that in lieu of the affidavit, Jenkins should have supplied such an explanation in a sworn statement accompanying his affidavit. The fact that New York courts may not "inflexibly" require such an affidavit sidesteps the fact that some courts apparently do and some do not. My reading of the case law is that such an affidavit probably should be submitted. The majority believes that such an affidavit need not be submitted. If court of appeals judges can honestly disagree over this point of law it seems to me wrong for a court of equity to close the court to a *pro se* litigant who happened to find himself on the wrong side of this debate. This is especially so where the cost of his choice is an additional forty years of incarceration for a man who, as indicated below, may well have received constitutionally ineffective assistance of counsel. Where equity is the point of departure, this constellation of circumstances is, I believe, extraordinary.

As to the second part of the equitable tolling analysis, I have little difficulty concluding that Jenkins acted with "reasonable diligence" during the period that he seeks to toll. In order to secure the affidavit, Jenkins wrote Smith at least five letters, four of which included an explicit request for a supporting affidavit, and two of which were sent prior to the expiration of the

5

statutory period for bringing a habeas petition. His efforts were certainly reasonable for a prisoner with relatively limited means of communication. *Holland*, 130 S. Ct. at 2565 ("The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." (internal citations and quotation marks omitted)); *Baldayaque*, 338 F.3d at 153 ("The standard is not 'extreme diligence' or 'exceptional diligence,' it is *reasonable* diligence. . . . [T]he district court should ask: did the petitioner act as diligently as reasonably could have been expected *under the circumstances?*" (emphasis in original)).

The significant backdrop to this analysis is that had Jenkins been permitted to file his petition, he, on the basis of the record as it now stands, would have presented a compelling case that he received constitutionally ineffective representation. At trial Jenkins was convicted of two counts of assault and sentenced to two consecutive twenty-five year prison terms for a total sentence of fifty years. In his affidavit submitted to the district court in support of his habeas petition, Jenkins maintained that Smith did not inform him that his total sentencing exposure was fifty years. Jenkins argues that Smith conveyed two separate plea offers of eight and seven years to him prior to trial. However, based on Smith's advice that Jenkins would likely have received a ten to twelve year sentence if he lost at trial, and that he had a "50-50" chance of acquittal, Jenkins declined both plea offers. Notably, Jenkins also submitted to the district court an affirmation from Smith confirming that he communicated various plea offers to Jenkins, but that he "did not inform Mr. Jenkins that his exposure was 50 years." These facts stand uncontradicted on the current record.

"To advance an ineffective assistance of counsel claim in the context of a plea, the defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but

6

for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Doe*, 537 F.3d 204, 213-14 (2d Cir. 2008) (citations omitted). With respect to the first prong, this Court has recognized that the Sixth Amendment right to effective assistance of counsel contemplates competent professional advice during plea negotiations. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1482-86 (2010); *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010). In particular, counsel's failure to properly advise a client of his sentencing exposure, such as the possibility of consecutive sentences, may indicate constitutionally ineffective assistance. *See Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) ("[C]ounsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." (citations omitted)); *see also Davis v. Greiner*, 428 F.3d 81, 88-90 (2d Cir. 2005); *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999); *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998).

With respect to the second prong, "a defendant's statements that he would have accepted a plea offer in combination with some objective evidence, such as a significant sentencing disparity, is sufficient to support a prejudice finding." *Brown*, 623 F.3d at 112 (citation and quotation marks omitted). Here, Jenkins has averred that he would have accepted the plea offer if he knew the length of the sentence he otherwise would have faced. Thus, as a result of apparently inadequate assistance from his trial counsel at a crucial stage of the proceedings, Jenkins is serving what the majority concedes is an "extremely severe" sentence that apparently could have been four or five times shorter had he been appropriately counseled. Majority Op. __.

*Holland* emphasizes that the role of courts sitting in equity is to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules . . . ." *Holland*, 130 S. Ct.

7

at 2563 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 248 (1944)). *Holland* also emphasizes that "[t]he flexibility inherent in equitable procedure enables courts to meet new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices." *Id.* (internal quotation marks and alterations omitted). This Court has similarly recognized that "[u]nder common law principles it is well established that equitable discretion may sometimes be exercised to avoid harm to . . . a party that would be the consequence of the unflinching application of legal principles." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 344 (2d Cir. 2005). The majority's approach, I respectfully suggest, neither recognizes nor applies any of these principles which, in my view, tilt sharply in Jenkins's favor.

At the end of the day Jenkins's petition might well fail. Most do. However, before being required to spend an additional forty years incarcerated as a result of what could well have been constitutionally ineffective assistance of trial counsel, I would permit his petition, at the very least, to be received and examined by the district court.