Jessie ENGLES, Plaintiff,

v.

Manesh MEWAR, et al., Defendants.

6:16–CV–06126 EAW

United States District Court,
W.D. New York.

Signed 09/27/2017

Jessie C. Engles, Attica Correctional Facility, Attica, NY, pro se.

Heather Lynn McKay, New York State Attorney General's Office Department of Law, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

### INTRODUCTION

Plaintiff Jessie C. Engles ("Plaintiff"), *pro se* and incarcerated, brings this action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment, resulting from deliberate indifference to serious medical needs in the form of lack of adequate dental treatment. (Dkt. 1). Presently before the Court is a motion filed by four defendants—W. Burgher ("Burgher"), D. Gladstone ("Gladstone"), R. J. Haag ("Haag"), and R. TenBrink ("TenBrink") (collectively, "Defendants")—to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and as barred by the statute of limitations.[1] (Dkt. 11). For the following reasons, Defendants' motion to dismiss is granted, although Plaintiff may attempt to replead the claims in accordance with this Decision and Order.

## BACKGROUND

### I. Factual Background

The following facts are drawn from Plaintiff's complaint. Defendant TenBrink is a dentist at Attica Correctional Facility ("Attica"), Defendant Haag is a dentist at Southport Correctional Facility ("Southport"), and Defendants Gladstone and Burgher are dentists at Auburn Correctional Facility ("Auburn"). (Dkt. 1 at 1).

On February 9, 2009, while incarcerated at Downstate Correctional Facility ("Downstate"), Plaintiff was examined by a dentist who told Plaintiff that he needed treatment for cavities. (*Id.* at 8). The dentist told Plaintiff that he would be placed on a waiting list for the treatment. (*Id.*).

Plaintiff was subsequently transferred to several different correctional facilities in 2009 and 2010. (*Id.*). Plaintiff was transferred from Downstate to Sing Sing Correctional Facility ("Sing Sing"); while at Sing Sing, he filed "sick call slips for dental care" but was again placed on a waiting list. (*Id.*). He was transferred from Sing Sing to Attica on May 18, 2009, then to Southport on October 26, 2009, and then to Auburn. (*Id.*). At each of those facilities, Plaintiff requested dental treatment and was placed on a waiting list. (*Id.*). According to Plaintiff, around the time that he was transferred to Auburn, "[he] started to become aware of the way [he] kept getting transferred out after [he] began to file grievances regarding this matter." (*Id.*).

On March 1, 2010, Plaintiff was transferred to Five Points Correctional Facility

---

1. Non-moving Defendants S. F. Hartman, Donald D. Hellert, Maureen Keller, and Manesh Mewar have answered the complaint.

(Dkt. 10). A summons was returned unexecuted as to Defendant J. D. Lawson. (Dkt. 14).

("Five Points"), and was then transferred to Marcy Correctional Facility ("Marcy") on March 10, 2011. (*Id.* at 8–9). At both Five Points and Marcy, as at the previous facilities, Plaintiff "was either pulled out for x-rays of [his] teeth, or had them cleaned, before being place[d] on the waiting list for filling[s] for [his] cavities." (*Id.* at 8). According to Plaintiff, his medical need for cavity treatment had been noted on his record for nearly two years by the time he was at Marcy. (*Id.* at 9). A dentist at Marcy told Plaintiff that one of his teeth needed to be extracted before his cavities could be treated, and Plaintiff consented. (*Id.*).

However, before Plaintiff had that tooth extracted, he was transferred to Elmira Correctional Facility ("Elmira") on June 10, 2012, and then to Wende Correctional Facility ("Wende") on July 10, 2013. (*Id.*). He was placed on a waiting list for cavity treatment at both Elmira and Wende. (*Id.*). At that time, Plaintiff had been experiencing "pain off [and] on for months...." (*Id.*).

On or about September 24, 2013, Plaintiff was transferred to Great Meadow Correctional Facility ("Great Meadow"), where he remained for approximately two months before being transferred back to Five Points. (*Id.* at 10). Plaintiff requested emergency care at Five Points and received x-rays on or about May 5, 2014, and was again placed on the waiting list for treatment. (*Id.*). Plaintiff asserts that he was deprived of dental care at Five Points until April 20, 2015, when he was transferred back to Attica. (*Id.*).

At Attica, Plaintiff again requested emergency treatment. (*Id.*). Between April 20, 2015, and January of 2016, Plaintiff was seen by a dentist who informed Plaintiff that he needed an extraction, which Plaintiff initially refused. (*Id.*). Plaintiff later consented because the dentist "wouldn't

have done [Plaintiff's] root canals for two of [his] other t[ee]th, nor the filling if [Plaintiff] didn't consent...." (*Id.*). Following the extraction, the dentist left a piece of Plaintiff's tooth in his gums, which continues to bother him. (*Id.* at 10–11). Plaintiff was then transferred from Attica to Five Points. (*Id.* at 11).

In sum, Plaintiff alleges that at every facility in which he filed a grievance, he was subsequently transferred to another facility instead of receiving adequate treatment for his worsening dental needs. (*Id.* at 8–12). Plaintiff claims that Defendants Burgher and Gladstone at Auburn, Defendant Haag at Southport, and Defendant TenBrink at Attica were "all deliberate[ly] indifferen[t] to ... [Plaintiff's] serious medical needs...." (*Id.* at 11). He alleges that the "cavities [and] holes in [his] teeth ... cause [him] extr[eme] pain [and] emotional distress." (*Id.*). Specifically, Plaintiff alleges:

> [M]y teeth deteriorated to the point 3 of my teeth had to be pulled out while at [Five Points], Marcy [ ], and Attica within the last 3 years from the filing of this complaint and 2 or 3 of my other t[ee]th needed root canals and I also had 2 holes in two different teeth for over a year causing me pain & prevent[ing] me from eating from time to time.

(*Id.*).

Attached to Plaintiff's complaint are his dental clinical records, grievances concerning his dental treatment, and the responses to those grievances. (*Id.* at 17–40). The dental clinical records contain the following notes by Defendants. On January 29, 2010, Defendant Gladstone wrote that Plaintiff requested emergency fillings, but Gladstone "informed [Plaintiff that he] is scheduled like everyone else for fillings and needs to wait his turn like everyone else." (*Id.* at 19). Defendant TenBrink noted that Plaintiff did not show up for ap-

pointments on four occasions in June of 2015 and, again, on October 14, 2015. (*Id.* at 26–27). On those occasions, TenBrink noted that Plaintiff was in the Special Housing Unit ("SHU") and that no escort was available. (*Id.*).

Plaintiff's grievances do not reference Defendants by name. (*Id.* at 28–40).

## II. Proceedings in this Court

Plaintiff filed his original complaint in this action on March 1, 2016. (Dkt. 1). By Order dated June 30, 2016, the Court granted Plaintiff leave to proceed *in forma pauperis* and screened Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. (Dkt. 5). The Court dismissed certain claims and terminated some defendants from this action, but Plaintiff's deliberate indifference claims against Defendants Mewar, Hartman, Hellert, TenBrink, Haag, Lawson, Keller, Burgher, and Gladstone remained. (*Id.* at 7–8).[2]

On September 27, 2016, Defendants Hartman, Hellert, Keller, and Mewar filed answers to Plaintiff's complaint. (Dkt. 10). On the same day, Defendants TenBrink, Haag, Burgher, and Gladstone filed the instant motion to dismiss. (Dkt. 11). The Court initially set a briefing schedule requiring Plaintiff to respond by October 25, 2016, and Defendants to reply by November 8, 2016. (Dkt. 13). After Plaintiff represented that he had received neither the motion to dismiss nor the answer filed by the non-moving defendants, the Court issued a revised Scheduling Order requiring Plaintiff to file a response by December 30, 2016, and Defendants to file a reply by January 13, 2017. (Dkt. 18). Plaintiff filed a response to the motion to dismiss on December 19, 2016.[3] (Dkt. 20). Defendants did not file a reply.

## DISCUSSION

All four defendants argue that Plaintiff has failed to state a claim for relief. (Dkt. 11–1 at 1). Alternatively, three Defendants—Haag, Gladstone, and Burgher—argue that the claims against them are time barred. (*Id.*).

## I. Standard for Motion to Dismiss

In considering a Rule 12(b)(6) motion to dismiss, a court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868

---

**2.** The Court erroneously referred to Defendant Hellert as "Herbert" in its June 30, 2016, Order. (Dkt. 5 at 7).

**3.** Plaintiff's response primarily rehashes the factual allegations set forth in the complaint. (Dkt. 20 at 3). Additionally, Plaintiff alleges destruction of his outgoing mail by prison officials, destruction of his personal property—including his legal documents—by prison officials, and a delay in receiving his personal property due to a prison transfer. (*Id.* at 9–11). Plaintiff argues that the equitable tolling doctrine should be applied to prevent his action from being time barred. (*Id.* at 11).

(2009); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("The plausibility standard is not akin to a probability requirement.... A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." (citations and internal quotation marks omitted)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (alteration and citations omitted). Thus, "at a bare minimum, the operative standard requires the 'plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.' " *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration and citations omitted).

In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations and citation omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations."). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). A court may not "invent factual allegations that [plaintiff] has not pled." *Id.*

## II. 42 U.S.C. § 1983

■■■ Plaintiff brings this action pursuant to 42 U.S.C. § 1983.

> To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.

*Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Plaintiff alleges that Defendants were deliberately indifferent to a serious medical need, that is, his need for dental treatment. In cases where the alleged Eighth Amendment violation arises from the denial of medical treatment, a claim is sufficiently stated only where the allegations would establish that the defendant prison official was "deliberately indifferent either to a prisoner's existing serious medical needs or to conditions imposing a substantial risk of serious future harm." *Joyner v. Greiner*, 195 F.Supp.2d 500, 505 (S.D.N.Y. 2002) (citation omitted).

■■■ Further, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted). Personal involvement can be established, among other ways, by alleging that "the defendant exhibited deliberate indifference to the rights

of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Id.*

### III. Failure to State a Claim

■ In the present case, Plaintiff fails to state a claim against Defendants. Plaintiff's only references to Defendants are as follows: Plaintiff (1) identifies Defendants in the caption by name, title, and correctional facility; (2) states, in the substance of his complaint, that Defendants Gladstone and Burgher were dentists at Auburn; and (3) states, in a conclusory fashion, that Defendants were deliberately indifferent to Plaintiff's serious medical needs. (Dkt. 1 at 1, 8, 11). Although the dental clinical records contain references to Defendants (*id.* at 19, 26–27), those references shed no light on what Defendants allegedly did or did not do to create the harm that Plaintiff alleges. Thus, Plaintiff fails to allege any facts that would allow the Court to infer that Defendants were deliberately indifferent to Plaintiff's serious medical needs, or that Defendants were personally involved in the alleged constitutional deprivation.

### IV. Statute of Limitations

Defendants Haag, Gladstone, and Burgher also move to dismiss on the ground that the statute of limitations bars Plaintiff's claims against them. The Court will address the statute of limitations issue for the purpose of determining whether to dismiss Plaintiff's claims against Defendants with or without prejudice.

■ A motion to dismiss on statute of limitations grounds "generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Rule 12(b)(6), as opposed to under Rule 12(b)(1)." *Courtney v. Colvin,* No. 13 Civ. 2884(AJN)(JLC), 2013 WL 5652476, at *2 (S.D.N.Y. Oct. 17, 2013). "In section 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions . . . .' " *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir. 2002) (alterations omitted) (quoting *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)). A § 1983 action filed in New York is subject to a three-year statute of limitations. *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013).

Here, Plaintiff's original complaint was signed and dated February 15, 2016, although it was not filed with this Court until March 1, 2016. (Dkt. 1 at 1, 12). Construing the filing date in the light most favorable to Plaintiff, any claims arising before February 15, 2013, are barred by the statute of limitations. *See Gordon v. Semrug,* 2017 WL 2241966, at *4 (W.D.N.Y. May 23, 2017) (in calculating the statute of limitations in § 1983 cases, "courts assume, pursuant to the 'prison mailbox' rule, that a pleading is filed when it is given to prison officials"). Plaintiff alleges that his Eighth Amendment rights were violated by Defendant Haag at Southport in 2009, and by Defendants Burgher and Gladstone at Auburn in 2010. (*Id.* at 8). Because those violations occurred more than three years prior to the filing of the initial complaint, Plaintiff's claims against those Defendants would ordinarily be time barred. However, Plaintiff points to the "continuing violation doctrine" and the doctrine of "equitable tolling" in an effort to save his otherwise time-barred claims.[4] (Dkt. 20 at 13).

---

**4.** Plaintiff refers to the doctrines as the "continuing toll" and "equitable toll." The Court interprets those references as raising the continuing violation and equitable tolling doctrines.

### A. Continuing Violation Doctrine

The continuing violation doctrine is an "exception to the normal knew-or-should-have-known accrual date." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citation omitted). The Second Circuit held, in *Shomo*, that the continuing violation doctrine can apply "when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs." *Id.* at 182. To assert a continuing violation in that context, "the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy.'" *Id.* (alterations in original) (quoting *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999)).

In the present case, Plaintiff has failed sufficiently to allege that Defendants took actions in furtherance of a discriminatory policy within the non-time-barred period. Even assuming the presence of a policy of deliberate indifference, no alleged facts suggest that Defendants committed acts in furtherance of the policy after February 15, 2013. First, Plaintiff's claim against Defendant Haag relies on deliberate indifference to his dental needs while at Southport in 2009. (Dkt. 1 at 19). Plaintiff was treated by Haag in October and December of 2009, years before his action became time barred. (*Id.* at 19). Similarly, Defendants Gladstone and Burgher treated Plaintiff at Auburn between December 29, 2009 and February 26, 2010, before Plaintiff was transferred to Five Points on March 1, 2010. (*Id.* at 8, 19). Plaintiff does not allege that he returned to Auburn or Southport, or that Burgher, Haag, and Gladstone were responsible for his dental care at any point during the non-time-barred period. Thus, the continuing violation doctrine is inapplicable with respect to Plaintiff's action against Defendants Burgher, Haag, and Gladstone.

### B. Equitable Tolling Doctrine

Plaintiff also argues, in his response to Defendants' motion to dismiss, that the doctrine of equitable tolling applies to this action. (Dkt. 20 at 8–9). "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000) (citation omitted). "The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its 'tolling rules....'" *Pearl*, 296 F.3d at 80 (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484–86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)). The Second Circuit has concluded that "the New York courts have adopted the same equitable estoppel doctrine" that applies under federal law. *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir. 1983).

The doctrine of equitable tolling can apply in the context of § 1983 claims, *see Covington v. N.Y.C. Police Dep't*, 471 Fed.Appx. 28, 29 (2d Cir. 2012), but it is appropriate only "in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights," *Zerilli–Edelglass v. N.Y. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citations and quotations omitted). A plaintiff arguing that equitable tolling is justified "must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003) (citations omitted). A plaintiff also must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equita-

ble tolling rests and the lateness of his filing, a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Rivera v. United States*, 448 Fed. Appx. 145, 146 (2d Cir. 2011) (citations omitted).

The Second Circuit has held that egregious conduct on the part of the plaintiff's attorney, *Baldayaque*, 338 F.3d at 152–53, and mental illness that impaired the plaintiff's ability to comply with the filing deadline, *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010), are sufficiently extraordinary circumstances to justify application of the doctrine. The Tenth Circuit has held that a statute of limitations may be equitably tolled when "the defendant has wrongfully impeded the plaintiff's ability to bring the claim." *Gillings v. Banvelos*, 650 Fed. Appx. 622, 623 (10th Cir. 2016). Although " 'a garden variety claim of excusable neglect,' ... and 'the usual problems inherent in being incarcerated' are insufficient to warrant equitable tolling," *Woodason v. United States*, No. 13 Civ. 2020(DLC), 10 Cr. 1156(DLC), 2014 WL 657529, at *1 (S.D.N.Y. Feb. 20, 2014) (citations omitted), it is possible that intentional interference by prison personnel may qualify as sufficiently extraordinary.

"The burden lays with [the plaintiff] to establish the entitlement to equitable tolling," *see Sorce v. Artuz*, 73 F.Supp.2d 292, 299 (E.D.N.Y.1999), and Plaintiff has raised circumstances that may qualify as sufficiently extraordinary to justify application of the doctrine (Dkt. 20 at 8–11). Plaintiff alleges "tampering with" his outgoing mail, (*id.* at 8–9), as well as destruction of his personal property, including all of his legal documents and outgoing mail, at Elmira, from July of 2012 through July of 2013, (*id.* at 9–10). Plaintiff further alleges that, in 2013, he was transferred to two different correctional facilities in four months, as a result of which there was a delay in his receipt of personal property which "prevented Plaintiff from filing ... [his] complaints again in a timely fashion/manner." (*Id.* at 10). Moreover, Plaintiff alleges that he was subjected to continuous harassment and a hostile environment, (*id.* at 9–10), and was repeatedly hospitalized due to mental illness, resulting in his transfer to yet another facility "where he was unable to prosecute his civil complaint," (*id.* at 10).

A number of Plaintiff's allegations could qualify as having presented sufficiently extraordinary circumstances to invoke equitable tolling. Particularly notable is Plaintiff's claim of interference by Elmira prison personnel with his outgoing mail between July of 2012, and July of 2013. Plaintiff alleges violations by Defendant Haag in December of 2009; by Defendant Burgher in February of 2010; and by Defendant Gladstone in January of 2010. The statute of limitations with respect to those claims expired during the time period when Plaintiff alleges that his mail was being tampered with and destroyed—December of 2012 for the claim against Defendant Haag; February of 2013 for the claim against Defendant Burgher; and January of 2013 for the claim against Defendant Gladstone. Thus, Plaintiff has alleged facts that suggest a causal relationship between that exceptional circumstance—the destruction of his outgoing mail—and the lateness of his filing. Although it is unclear from Plaintiff's response to the motion to dismiss whether Plaintiff exercised reasonable diligence during the period that he wishes to toll, *see Baldayaque*, 338 F.3d at 153, Defendants did not file a reply and thus do not argue that the doctrine should not apply here. Accordingly, there may be grounds

for application of the doctrine of equitable tolling.

### CONCLUSION

Because Plaintiff has failed to allege personal involvement, Defendants' motion to dismiss is granted for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). Because it is not clear that Plaintiff's claims are time barred, the dismissal is without prejudice and Plaintiff is granted leave to file an amended complaint only as directed above and **within thirty (30) days** of the filing of this Decision and Order.

Plaintiff is advised that an amended complaint is intended to **completely replace** the prior complaint in the action. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, Plaintiff's amended complaint must include all of the allegations against each of the defendants, so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

Plaintiff is forewarned that if he fails to file an amended complaint as directed, his claims against Defendants Burgher, Gladstone, Haag, and TenBrink will be dismissed with prejudice.

### ORDER

IT HEREBY IS ORDERED, that Plaintiff is granted leave to file an amended complaint as directed above by **October 27, 2017;**

FURTHER, that the Clerk of the Court is directed to send to Plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event Plaintiff fails to file an amended complaint as directed above by **October 27, 2017**, the claims against Defendants Burgher, Gladstone, Haag, and TenBrink will be dismissed with prejudice without further order of the Court.

SO ORDERED.